Rose Moss v. Sanger Bros. et al.

No. 2895.

**Argument of Counsel.**—Where on the trial two issues are presented, upon either of which the verdict could have been rendered, upon one of which there was a preponderance in testimony against the verdict, and the counsel of the successful party in

argument to the jury used abusive language not warranted by the testimony, and calculated to excite prejudice and influence hostile feelings against his adversary, such line of argument is considered ground for reversal.

APPEAL from Ellis.   Tried below before Hon. Anson Rainey.
The opinion states the case.

*W. H. Fears,* for appellant.

*D. F. Singleton* and *M. B. Templeton,* for appellees.

STAYTON, CHIEF JUSTICE.—Appellees being creditors of A. Moss, the husband of appellant, caused writs of attachment to be levied on a stock of dry goods and groceries, which at one time belonged to him.

She claims to have bought a part of the goods on the day the attachments were levied, and made her claim under the statute regulating the trial of right of property.   The cause was tried before a jury and resulted in a judgment against her upon a general verdict.

Appellant claims to have bought the merchandise in payment of a debt due to her from her husband, and appellees denied the existence of the debt, alleged that it was simulated, and further denied that the goods were so identified as to pass title.

The cause was tried on the same statement of facts as was the case of Mary Moss v. Sanger Bros. et al., this day decided.

There were but two questions in the case, and the court in effect so charged the jury.   To our minds the evidence greatly preponderates in favor of the proposition that A. Moss was indebted to his wife as claimed by her.   She proved the source from which the money alleged to be the consideration for her claim came, where it was deposited, and that $1250 of the $1500 claimed came into the possession of her husband through a draft drawn by her on that depository.

This last fact was proved by a witness who testified as follows:

"I know A. Moss and Rose Moss; I knew them in 1884; I was then teller in the Ennis National Bank.   On September 1, 1884, A. Moss presented at our bank an eight-day sight draft for $1250, signed by Mrs. Rose Moss and drawn on Marienthall Bros. & Co., Cincinnati, Ohio; said draft was paid on 12th day of September, 1884, and placed to the credit of Moss & Wise, less exchange.   This was all done by the direction of A. Moss.   Rose Moss was not in the bank, nor did she give any directions about the matter."

So far as the record shows, this witness was disinterested and in no way related to the parties.

It may be that the evidence preponderated in favor of the proposition that there was not such a designation of the merchandise sold as was necessary to identify it, but this was a question for the jury under all the

evidence, and as the case was tried by a jury we will not pass upon that question.

. The verdict was general, and we can not know whether the finding was against appellant on both issues involved.

The jury may have found in her favor on the last issue referred to and against her on the first, as a finding against her on either would have required a general finding against her.

In the closing address to the jury counsel for appellees used the following language, which was excepted to:                    .

"This entire business is a concocted scheme from beginning to end; a deliberate scheme to swindle and defraud, gotten up by a Jew, a Dutchman, and a lawyer    Who are the parties at interest?    A. Moss, his wife Rose Moss, his mother Mary Moss, his clerk D. Golden, and then B. Frieburg, the old he-Jew of all, who no doubt planned the whole thing.    All Jews, or Dutch Jews, and that is worse.    Will an honest jury of Ellis County let these people [pointing at A. Moss, Golden, and Raphael], whose every thought is how to cheat and swindle, perpetrate this infamous and outrageous fraud?    I think not."

Conveyances of parts of the stock of merchandise were claimed to have been made by A. Moss to Mary Moss, David Golden, and B. Frieburg at the same time the conveyance is claimed to have been made to appellant, and the relationship of the parties was shown.

Everything shown by the evidence to have occurred at the time of the transaction, as well as the relationship between the parties, was legitimate subject for fair comment, but the language of counsel went beyond this, and beyond any fact shown by the evidence.

It was an inflammatory appeal to a prejudice, no doubt conceived by counsel who made it to exist, and was intended to influence the jury. It was the arraignment of a race not on trial.

Causes ought to be tried in a court of justice upon the facts proved, and whether a party be Jew or Gentile, white or black, is a matter of indifference.

The course pursued in this case was one that no court of justice ought for a moment to tolerate, and it certainly must be true that the judge who tried this cause did not fully understand the language of counsel or he would not have permitted it; would have rebuked it, and ought to have punished its author.

We are asked to reverse the judgment on the ground, among others, that the language referred to was used.    Cases have arisen where the use of such language has been held sufficient to reverse a judgment.    Is this one of them?

As before said, the evidence preponderated in favor of appellant on the first issue, and we can not know that the second was not by the jury determined in her favor.    This being true, it may be that the course

pursued by counsel influenced the verdict.    Counsel doubtless intended it should; probably thought he understood the prejudices of the jury addressed by him, and may have succeeded in arousing that rather than in stimulating an earnest inquiry into the very truth of the case.

Parties ought not to be punished for misconduct of their counsel not sustained or influenced by them, but they must be held bound to relinquish a judgment where there is reasonable ground to believe that it may have been obtained through such means as were used in this case.

The verdict may or may not have been influenced by the language, but it was calculated and intended doubtless to have an influence, and as the case stood, with a preponderance of evidence in favor of appellant on one of the vital issues in the case, we deem its use a sufficient ground to require a reversal of the judgment, and it will for this reason be reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 3, 1889.