Juan PENATE, Appellant,

v.

Sherman Edwin BERRY, Appellee.

No. 5453.

Court of Civil Appeals of Texas.

El Paso.

May 31, 1961.

Rehearing Denied July 5, 1961.

Carter, Gallagher, Jones & Magee and Ben T. Warder, Jr., Dallas, for appellant.

Pinkney Grisson, David M. Kendall, Jr., Frank Finn, Jr., Thompson, Knight, Wright & Simmons, Dallas, for appellee.

ABBOTT, Justice.

This was a suit to recover damages for personal injuries, filed by appellant (plaintiff below) against Sherman Edwin Berry, appellee (defendant below), resulting from a collision between the vehicles operated by the same parties at the intersection of Winstead Street and Garland Road, in the City of Dallas, Texas. The case was submitted to the jury on special issues, and from their verdict that appellant take nothing, the court rendered its judgment. From that judgment appellant has perfected his appeal, and is properly before this court.

Garland Road is a six-lane highway, three lanes heading, generally, to the east, and three to the west, such lanes being divided by a concrete esplanade. At the intersection in question, each side of Garland Road has an insert, or extra lane, for traffic desiring to make a left turn. Winstead Street is a two-lane street, coming from the north and ending at Garland Road. A stop-sign is placed on Winstead, requiring traffic going into Garland Road to stop before entering.

On or about September 2, 1958, at about 8:10 A. M., appellee traveled south on Win-

stead until he reached Garland Road. He stopped, as required, at the stop-sign. Due to construction work on Garland Road, and also due to the time of day, Garland Road was carrying a heavy traffic load. Cars were stopped (and here, testimony differs) in either two or three of the traffic lanes on Garland Road which carried traffic to the west, and they were stopped on the east side of the intersection with Winstead Street. Appellee testified that the driver of one of the cars so stopped signaled him to go ahead. Appellee was going to cross the three lanes of Garland Road carrying west-bound traffic, and make a left turn into one of the three lanes carrying east-bound traffic. He testified that he proceeded out into the intersection and, according to the jury's findings, collided with appellant in the inside lane, or third lane from the curb. Appellee further testified that he did not see the motorcycle ridden by appellant until it was just a few feet from him. Appellee further testified that he was either stopped, or moving very slowly, at the time of the collision. He further testified that the vehicle ridden by appellant was in the left-turn lane at the time of the collision, but this was found against appellee by the jury.

Appellant testified that he was proceeding west on Garland Road, on the third, or inside, lane at a rate of fifteen or twenty miles per hour; that there was no traffic stopped in the lane in which he was travelling; that he knew there was a stop-sign halting traffic entering Garland Road from Winstead Street; and that he did not see appellee's car until the left crash bar of the motor-cycle had made contact with the bumper guard of appellee's Cadillac.

There is no contention that appellee was not injured; but, on the other hand, there is evidence that there was serious and permanent injury.

With the foregoing facts before us, we are faced with Assignments of Error 1, 2, 3, 4, 5 and 6, charging appellee with argument that was improper and that such argument was calculated to cause, and probably did cause, an improper verdict. There is no question about the fact that appellant was an alien from San Salvador, in Central America, and that he had filed his first papers for citizenship when entering this country some eight years prior to this trial. Appellant so testified on direct examination. Appellee's attorney, in his argument to the jury, made numerous statements referring directly or indirectly to this fact, the most inflammatory statement being, " * * * you see, it just so happens that in this country you can't come into court and reach your hands into the pockets of an *American* citizen and take his property from him— not for an *alien*—they may take away—", such argument being stopped by objection from appellant's counsel. The objection made at this point was not to the prejudice of such statement, but was to the reference as to who would have to pay for any damages assessed. The objection was overruled by the trial court. Generally speaking, to be entitled to a new trial because of improper argument, it must be shown that objection was made and overruled at the time the argument was made. Texas & N. O. R. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; but when the probable harm or the resulting prejudice cannot be eliminated or "cured" by retraction or instruction, then a new trial will be given, in the absence of timely objection. Texas Co. v. Gibson, 131 Tex. 598, 116 S.W.2d 686; Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197; Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, at page 858; Harris County Flood Control District v. Cohen, Tex.Civ.App., 282 S.W.2d 917.

The foregoing quotation from the argument is only one of numerous remarks, by appellee's counsel, directed to the citizenship of appellee. There can be no question but that these statements by appellee's attorney are error, and such error that instructions from the court (there were none in the present case) could not have removed the probable harm. It was an appeal to national prejudice in language clear and

strong. As the Supreme Court has stated, "cases ought to be tried in a court of justice upon the facts proved; and whether a party be Jew or gentile, white or black, is a matter of indifference." Moss v. Sanger, 75 Tex. 321, 12 S.W. 619, 620. For reference to non-resident status of one of the parties, or the obvious economic standing between the parties, we refer to Justice Garwood's opinion, in the case of Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115.

Under Rules 434 and 503, Vernon's Annotated Texas Rules of Civil Procedure, however, not only must there be error, but such error must be calculated to have produced the rendition of an improper judgment. Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (and cases therein cited). The jury in the present case absolved appellee from any negligence. On the other hand, the jury found appellant guilty of negligence in failing to keep a proper lookout, and guilty of failing to apply his brakes, both being negligence and the proximate causes of the accident. The jury also found that this was not an unavoidable accident, and that there were no damages as a result of the injuries to appellant. We further believe that the record of the case fails to produce sufficient evidence to justify those findings without some outside cause. We believe that these results were the probable result of improper argument. Appellee voluntarily placed himself in a position where he would be required to proceed with the caution of a person of ordinary prudence, and his failure to observe appellant must be taken into consideration, in view of the jury's findings. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273; Jaynes v. Lee et al., Tex.Civ. App., 306 S.W.2d 182.

Appellant is not required to show that, but for the questioned argument, a different judgment would have resulted, but only that it was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Pittman v. Baladez, 158 Tex. 372, at page 381, 312 S.W.2d 210 (and cases cited).

Believing that the argument of appellee was highly inflammatory and of such a nature as calculated to create bias and prejudice, and probably resulted in the judgment that it did, we reverse this case and remand for trial to the trial court. The other assignment of error is not discussed in this opinion, in that it will probably not re-occur in a new trial.