

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00162-CR

ROBERTO SANCHEZ                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

In five issues, Appellant Roberto Sanchez appeals his murder conviction. We affirm.

### II. Factual and Procedural Background

Sanchez and his friend drove to a Fort Worth nightclub where Sanchez's two cousins, Ingrid and Dilcia, worked. Dilcia spent most of the evening drinking and talking with Sergio Gonzalez, a customer. Around closing time, Dilcia told Sergio that she was leaving with Sanchez, Ingrid, and Sanchez's friend.

Sergio, upset that Dilcia was leaving with Sanchez, confronted the group in the parking lot as they prepared to drive away, shouting expletives and banging on the car's window. Sanchez and his friend got out of the car, and, after exchanging heated words with Sergio, Sanchez pulled a knife from his pocket. Sergio then fled to a parking lot next door as Sanchez chased him with the knife. Sanchez caught up to Sergio near an ice machine across the parking lot and, as Sergio leaped backwards to avoid the knife, Sanchez stabbed him once in the chest.

Before trial, the State informed the court and Sanchez's counsel that Dilcia, Ingrid, and Sanchez were in the country illegally,[1] and during Dilcia's testimony, when the State asked her if Sanchez was in the country illegally, Dilcia said that he was. At the close of evidence, Sanchez requested jury instructions on self-defense, defense of third persons, and necessity. The trial court denied the request, finding that the instructions had not been raised by the evidence. The jury found Sanchez guilty and assessed punishment at seventy years' confinement. The trial court sentenced him accordingly. This appeal followed.

### III. Request for Mistrial

In his fifth issue, Sanchez asserts that the trial court abused its discretion by not ordering a mistrial when the State asked Dilcia if Sanchez was in the

---

[1]All three were originally from Honduras.

2

country illegally and Dilcia responded that he was illegal and did not have papers. The State responds that Sanchez failed to preserve the issue for review because he did not object or move for mistrial. Sanchez concedes that he did not preserve the issue but argues that the testimony resulted in fundamental error that can only be remedied by declaring a mistrial.

## A. Testimony

The challenged statement was elicited during the following exchange between the prosecutor and Dilcia:

Q: And did you—how old were you when you met [Sanchez]?

A: Ever since I was a baby. I don't recall since I was a little girl.

Q: Did you both live in Honduras together?

A: No. He was living in a little town and I was living in another.

Q: So you were living in different towns, but they were nearby in Honduras?

A: Yes, yes.

Q: And did you come here before or after he did?

A: I came—I came here first.

Q: And are you aware is Roberto Sanchez here legally or illegally?

A: Well, illegal, he doesn't have papers.

Q: Now, did you used to know a man by the name of Sergio Gonzales?

A: Yes.

Q: How do you know Sergio?

3

A: I met him at a bar.

## B. Preservation of Error

To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Clay*, 361 S.W.3d at 765.

A motion for mistrial must be timely and specific. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App.), *cert. denied*, 552 U.S. 864 (2007). It is timely only if it is made as soon as the grounds for it become apparent. *Id.*

The record shows that Sanchez neither objected to Dilcia's testimony nor requested that the trial court order a mistrial. Therefore, we will only address Sanchez's complaint if it falls under one of two narrow categories of error: violations of "rights which are waivable only" and denials of "absolute systemic requirements," both of which may be raised for the first time on appeal. *See*

4

*State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd).

Sanchez argues that the trial court abused its discretion by allowing the question and answer because the State asked this question "solely to inflame" the jury and "invoke racial bias and prejudice based upon alienage in violation of the [Fourteenth] Amendment." To support his argument, Sanchez refers us to two federal cases, *United States v. Borrero-Isaza*, 887 F.2d 1349, 1355 (9th Cir. 1989) and *United States v. Onuwuemene*, 933 F.2d 650, 652 (8th Cir. 1991),[2] as well as several state cases: *Moss v. Sanger*, 75 Tex. 321, 12 S.W. 619 (1889),[3] *Guerra v. State*, 771 S.W.2d 453 (Tex. Crim. App. 1988), *cert. denied*, 492 U.S.

---

[2]The two federal cases discuss the impropriety of considering a defendant's alienage classification to impose a stricter sentence under the federal sentencing guidelines and are therefore inapplicable to the issue presented here because they do not pertain to testimony about a defendant's alienage during the guilt-innocence phase of trial or what the defendant had to do to preserve his complaint. *See Borrero-Isaza*, 887 F.2d at 1352–53 (holding that defendant's due process rights were violated when the district court imposed a stricter sentence based on the defendant's national origin and alienage); *see also Onuwuemene*, 933 F.2d at 651 (citing to the Ninth Circuit's reasoning in *Borrero-Isaza* to support the conclusion that sentencing an offender on the basis of factors such as race, national origin, or alienage violates the federal constitution).

[3]In *Moss*, a civil suit, Sanger's counsel made blatantly prejudicial statements during closing argument. 75 Tex. at 323–24, 12 S.W. at 619–20. The supreme court reversed the judgment on the basis that cases should be tried "upon the facts proved; and whether a party be Jew or gentile, white or black, is a matter of indifference." *Id.* The court did not address whether Moss's counsel had objected to the statements made during closing arguments.

5

925 (1989),[4] *Penate v. Berry*, 348 S.W.2d 167 (Tex. Civ. App.—El Paso 1961,

writ ref'd n.r.e.),[5] *Infante v. State*, 25 S.W.3d 725 (Tex. App.—Houston [1st Dist.]

2000, pet. ref'd)[6] and *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870 (Tex. App.—

---

[4]In *Guerra*, the court of criminal appeals concluded that the appellant was not harmed when the trial court denied his challenge for cause to a venireperson who had evinced a bias against him "as a member of the class of illegal aliens" because the trial court had instead granted defense counsel an additional strike to replace the one used on that particular venireperson. 771 S.W.2d at 462–63. Because this case concerned a potential juror's bias against illegal aliens, which was remedied during trial by the trial court, and not a reference made to a defendant's citizenship status during trial that was not objected to, this case also fails to resolve our preservation issue.

[5]In *Penate*, a personal injury suit, Berry's counsel made numerous remarks about Penate's citizenship status during closing arguments, which the El Paso court held was improper as having been reasonably calculated to result in an improper judgment. 348 S.W.2d at 168–69. However, in contrast to the case before us, Penate's counsel objected repeatedly to Berry's counsel's remarks during closing argument, while Sanchez offered no objection to Dilcia's statement and the State did not reference the remark during its closing arguments.

[6]In *Infante*, during the punishment phase of trial, the prosecutor was allowed to ask, over the defendant's objection, if he was an illegal alien, and the prosecutor asked the question several times because the defendant's answers were mostly non-responsive. 25 S.W.3d at 726. The defendant denied that he was an illegal alien. *Id.* The defendant filed a motion for new trial, complaining that the trial court abused its discretion by admitting into evidence allegations that he was an illegal alien and in finding that he was an illegal alien and should be deported after satisfying his 180 days' confinement on each conviction. *Id.* On appeal, the court distinguished consideration of an illegal status with consideration of alienage, stating that while an inquiry into the former serves the purpose of discovering whether the defendant is, in fact, committing a crime with regard to his legal status in this country, an inquiry into the latter serves no such purpose. *Id.* at 727. Unlike Sanchez in the instant case, the defendant objected to the question. *Id.* at 726.

6

Fort Worth 2007), *rev'd*, 306 S.W.3d 230 (Tex. 2010).[7] After careful review of the cases cited in Sanchez's brief, however, we conclude that Sanchez has not provided, and this court is not otherwise aware of, any authority that categorizes a single question pertaining to a defendant's alienage classification as a waivable-only right or an absolute systemic requirement. *See Anderson*, 301 S.W.3d at 279; *see also Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003) (reciting examples of waivable-only rights and systemic requirements); *Saldano v. State*, 70 S.W.3d 873, 888–89 (Tex. Crim. App. 2002) (same).

Instead, Sanchez invokes the broad and amorphous concept of due process to argue that the statements violated his constitutional rights, thus exempting his complaint from forfeiture under rule of appellate procedure 33.1. However, no such due process exception to a rule of procedural default exists in our current jurisprudence. *Anderson*, 301 S.W.3d at 279–80 ("[O]ur prior

---

[7]In *Hughes*, a wrongful death and survival action stemming from a multi-fatality vehicular accident, the supreme court held that the driver's statements about his immigration status were inadmissible for two reasons: his immigration status was a collateral matter that was not relevant to proving a material issue in the negligent-entrustment case, and his immigration status was not admissible to impugn his character for truthfulness. 306 S.W.3d at 233, 241–42. Further, the court emphasized that the plaintiffs sought to bolster their allegations by calling attention to the driver's immigration status whenever possible, making more than forty references to that status. *Id.* at 243–45 (noting that the plaintiffs' repeated injection into the case of the driver's nationality, ethnicity, and illegal-immigrant status "was plainly calculated to inflame the jury against him"). In contrast, here, Sanchez's illegal alien status was mentioned only once during the entire proceeding, and the State did not predicate its trial strategy or shape its closing argument around that status. And unlike Sanchez in the instant case, in *Hughes*, TXI objected to evidence regarding the driver's status as an illegal immigrant. *Id.* at 234.

decisions make clear that numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved."). Accordingly, because Sanchez did not timely object to the challenged testimony or move for a mistrial, we hold that Sanchez failed to preserve his fifth issue for review.[8] *See* Tex. R. App. P. 33.1(a)(1); *Clark*, 365 S.W.3d at 339; *Mendez*, 138 S.W.3d at 342. We therefore overrule it.

## IV. Jury Charge

In his first three issues, Sanchez argues that the trial court erred by denying his requested jury instructions on self-defense, necessity, and defense of third persons. According to Sanchez, the three instructions were raised by Dilcia and Ingrid's testimonies. The State responds that the trial court properly denied the requested instructions because the evidence showed that Sergio was unarmed and that Sanchez escalated the encounter by responding with an unjustified level of force.

---

[8]Notwithstanding that we are constrained by the preservation requirement to reach this outcome, we do not condone in any way the State's decision to introduce Sanchez's illegal status during the guilt-innocence phase of trial. As stated by our supreme court, "Such appeals to racial and ethnic prejudices, whether 'explicit and brazen' or 'veiled and subtle,' cannot be tolerated because they undermine the very basis of our judicial process." *Hughes*, 306 S.W.3d at 245; *see also Garcia v. State*, 683 S.W.2d 715, 718–19 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd) (indicating disapproval of attempt to interject improper evidence of defendant's illegal status into case).

8

## A. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* A defendant is entitled to a defensive instruction only if evidence is admitted supporting the defense. Tex. Penal Code Ann. § 2.03(c) (West 2011); *Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). A defense is raised by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Shaw*, 243 S.W.3d at 657–58. In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. *Id.* at 658. If a defense is supported by the evidence, then the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Id.* But the evidence must be such that it will support a rational jury finding as to each element of that defense. *Id.*

## B. Requested Instructions

Sanchez first asked for instructions under penal code sections 9.31 and 9.32, which provide that a person is justified in using deadly force against

another "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." Tex. Penal Code Ann. §§ 9.31(a), 9.32(a)(1)–(2)(A) (West 2011). Accordingly, Sanchez was entitled to a charge on self-defense if evidence was presented that, if believed, showed that Sanchez reasonably believed his use of deadly force was immediately necessary to protect himself against Sergio's use or attempted use of deadly force. *See Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011). Concomitantly, Sanchez requested an instruction under penal code section 9.33, which states that the use of force against another to protect a third person is justified if, under the circumstances as the actor reasonably believes them to be, the actor would be justified in using deadly force to protect himself, and the actor reasonably believes that his intervention is immediately necessary to protect the third person. Tex. Penal Code Ann. § 9.33 (West 2011).

Sanchez also requested a necessity instruction under penal code section 9.22, which justifies the otherwise criminal conduct if (1) the defendant reasonably believes that his conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct; and (3) no legislative purpose exists to exclude the defense. *Id.* § 9.22 (West 2011). A "reasonable belief" is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. *Id.* § 1.07(a)(42) (West Supp. 2013).

10

Both parties agree that Sanchez, who did not himself testify, impliedly admitted the charged offense through Dilcia and Ingrid's testimonies. *See Wood v. State*, 271 S.W.3d 329, 334 (Tex. App.—San Antonio 2008, pet. ref'd) (stating that defendant must admit to committing offense before necessity instruction can be submitted); *see Hill v. State*, 99 S.W.3d 248, 250–51 (Tex. App.—Fort Worth 2003, pet. ref'd) (noting that self-defense and defense of third person instructions require defendant admit charged conduct).

## C. Analysis

Two eyewitnesses, Dilcia and Ingrid, were present when the altercation began and testified about the events that took place. According to Dilcia, Sergio and his friend Pedro confronted their group in the parking lot because he was upset that she was leaving with Sanchez. Dilcia testified that Sanchez and his friend did not seem to be drunk, but that Sergio and Pedro both appeared drunk during the encounter. Sergio began knocking on the car's window hard enough that Dilcia was scared the glass would break.

Dilcia testified that she tried to calm Sergio down by telling him that Sanchez was her cousin, but Sergio kept banging on the window and began shouting obscenities at the group. Dilcia also stated that Sergio's hands were empty and that he was hitting the window with his closed fists.

Ingrid testified that when Sanchez and his friend got out of the car, Pedro took a swing at Sanchez but was so drunk that he missed Sanchez and fell to the ground. Sanchez's friend punched and kicked Pedro in the face while he was on

11

the ground. Ingrid further testified that after Sergio and Sanchez exchanged words, Sanchez got upset and pulled a knife from his pocket.

Upon seeing the knife, Sergio ran to a parking lot next door as Sanchez chased him with the knife. When Sergio finally turned to face the charging Sanchez, Ingrid saw Sanchez make a straightforward thrusting motion with the knife as Sergio leapt backwards with his hands raised in the air. Ingrid also stated that she tried to stop Sanchez by yelling at him to not look for any trouble and to leave Sergio alone.

Dilcia testified that after Sanchez returned to the car, he acted happy and told his friend, "I pinch him, dude, and the same way that I put it in, I pull it out clean."[9] Additionally, Ingrid said that as they were speeding away from the parking lot, Sanchez told her "that it felt good to kill somebody."

Based on our review of the testimony and evidence presented at trial, we cannot agree with Sanchez's contention that the trial court erred by denying his requested jury instructions. No evidence showed that Sanchez believed he needed to use deadly force to protect himself or his cousins. Instead, the two eyewitnesses describe a predacious Sanchez who acted out of anger, not protective instinct, in pursuing the unarmed Sergio as he attempted to escape from Sanchez. No evidence showed that Sergio used or attempted to use deadly force—in fact, the eyewitnesses testified that Sergio, although belligerent and

---

[9]Dilcia explained that "pinch" is a Honduran expression for stab.

12

intoxicated, was unarmed throughout the entire confrontation. *See* Tex. Penal Code Ann § 9.01(3) (West 2011) ("'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury."); *Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd) (stating that deadly force was not justified in response to attempted punch, which was not deadly force); *Schiffert v. State*, 257 S.W.3d 6, 14 (Tex. App.—Fort Worth 2008, pet. dism'd) (holding that a punch could not demonstrate attempt to use deadly force).

While the evidence showed that Sergio acted erratically by banging on the car window, nothing in the record reveals any basis for Sanchez to reasonably believe that he needed to use deadly force against Sergio. *See* Tex. Penal Code Ann. § 1.07(a)(42) ("'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor."); *Kirkpatrick v. State*, 633 S.W.2d 357, 358 (Tex. App.—Fort Worth 1982, pet. ref'd, untimely filed) (concluding that appellant was not entitled to use deadly force when victim "hollered" at him and threatened to "kick his ass").

Here, the evidence presented to the jury showed that Sanchez escalated the encounter by responding with a greater level of force and maintaining his aggressive response despite Sergio's flight. Therefore, the trial court correctly found that Sanchez was not entitled to instructions on self-defense, defense of third persons, or necessity. Having determined that the trial court did not err by denying the requested instructions, we overrule Sanchez's first three issues.

13

## V. Autopsy Photograph

In his fourth issue, Sanchez argues that the trial court abused its discretion by admitting an autopsy photograph. Specifically, he argues that State's Exhibit 39,[10] a photograph depicting a laceration on Sergio's chest, was unfairly prejudicial and therefore should have been excluded under rule of evidence 403.

### A. Standard of Review

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *see Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006). Among the many factors a court may consider in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice are the number of exhibits offered; their gruesomeness; their detail;

_____

[10]In his brief, Sanchez indicates that the challenged autopsy photo was introduced into evidence as State's Exhibit 30. After reviewing the record, we note that Sanchez objected to an autopsy photo introduced as State's Exhibit 39. The image portrayed in State's Exhibit 39, as well as Sanchez's objections at trial, coalesce with the arguments Sanchez makes in his brief, indicating that his reference to State's Exhibit 30 was a clerical mistake. Accordingly, we will assume for purposes of analysis that Sanchez intended to refer us to the objection he made at trial concerning State's Exhibit 39.

14

their size; whether they are in color or black-and-white; whether they are close up; whether the body depicted is clothed or naked; the availability of other means of proof; and other circumstances unique to the individual case. *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000); *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997); *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992).

The admissibility of photographs over an objection is within the trial court's sound discretion. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003), *cert. denied*, 543 U.S. 823 (2004). Photographs that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effect. *Frank v. State*, 183 S.W.3d 63, 78 (Tex. App.—Fort Worth 2005, pet. ref'd); *see Legate v. State*, 52 S.W.3d 797, 807 (Tex. App.—San Antonio 2001, pet. ref'd). The trial court's decision will be reversed only if it was outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 150–53 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *In re J.B.C.*, 233 S.W.3d 88, 94 (Tex. App.—Fort Worth 2007, pet. denied).

## B. Analysis

Here, Sanchez complains that because there was no dispute that Sergio died of a stab wound, the photograph served only to inflame the minds of the jury

15

and unfairly prejudice Sanchez. State's Exhibit 39 was an eight-by-ten-inch photograph showing a close-up view of multiple wounds located on the left side of Sergio's chest. The photograph was introduced during the testimony of Tarrant County medical examiner Dr. Nizam Peerwani, who performed the autopsy. Dr. Peerwani testified that the photograph depicted the wounds on Sergio's body, which included a superficial laceration above his left armpit, a stab wound on the left side of his chest, and a sutured incision across the left side of his chest. According to Dr. Peerwani, the sutured incision was produced by the emergency room surgeon in the process of trying to resuscitate Sergio. Using the photograph as a reference point, Dr. Peerwani also explained that while the laceration above Sergio's armpit was superficial, the stab wound was of great importance because that injury ultimately caused Sergio's death.

Additionally, State's Exhibit 39 was the only autopsy photograph that showed the laceration on Sergio's armpit and the sutured incision across his chest. Thus, the autopsy photograph had probative value because it portrayed the extent and location of Sergio's injuries and aided the jury in identifying which wound was the primary cause of death. *See Frank*, 183 S.W.3d at 78.

Further, the photograph, coupled with Dr. Peerwani's testimony, was probative because it distinguished the laceration and stab wound inflicted during the incident from the sutured incision caused by emergency personnel's attempts to save Sergio's life. *See Rayford*, 125 S.W.3d at 529; *Frank*, 183 S.W.3d at 78. Sanchez argues that the photograph lacks probative value because the evidence

16

already established that Sergio died from the stab wound.  However, the court of criminal appeals has rejected the premise that visual evidence accompanying oral testimony is either cumulative of oral testimony or of insignificant probative value.  *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (recognizing that visual evidence accompanying testimony gives fact finder a point of comparison to test credibility of witness and validity of his conclusions), *cert. denied*, 528 U.S. 1082 (2000).

Sanchez further contends that the prejudice caused by the photograph far outweighs its probative value; however, Sanchez does not provide any explanation as to how the photograph created unfair prejudice.  To the contrary, the photograph does not depict any mutilation caused by the autopsy, and it is no more gruesome than would be expected from the type of injury Sergio suffered. *See Rayford*, 125 S.W.3d at 529; *Shuffield*, 189 S.W.3d at 787–88; *Frank*, 183 S.W.3d at 78.  Therefore, we hold that the probative value of the autopsy photograph was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.  Accordingly, the trial court did not abuse its discretion by admitting State's Exhibit 39 into evidence, s*ee Paredes*, 129 S.W.3d at 539, and we overrule Sanchez's fourth issue.

17

## VI.  Conclusion

Having overruled all of Sanchez's issues, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  MCCOY and GABRIEL, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED:  November 27, 2013