

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00130-CR
### NO. 02-16-00131-CR

---

JASON J. ROSS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NOS. 1444232R, 1444581R

----------

## MEMORANDUM OPINION[1]

----------

Pursuant to Appellant Jason J. Ross's pleas of guilty to two counts of burglary charged in separate indictments and his pleas of true to the habitual offender allegations, the trial court convicted him of two counts of burglary and sentenced him to thirty-eight years' confinement on each count, with the sentences running concurrently. In two issues, Appellant contends that the trial

---

[1]*See* Tex. R. App. P. 47.4.

court erred by permitting the State to impeach his witness with details of Appellant's 2000 conviction for unlawful restraint and by failing to sua sponte withdraw his guilty pleas "when it became apparent that he was incapable of forming the specific intent to commit the offense[s] charged." Because Appellant forfeited his complaints, we affirm the trial court's judgments.

**Facts**

In each case, Appellant pled guilty to Count Two of the indictment, which alleged that he committed burglary in one of three ways: intentionally or knowingly, without the complainant's consent, (1) entering a habitation with intent to commit assault; (2) entering a habitation and attempting to commit assault; or (3) entering a habitation and committing assault.[2]

The punishment evidence showed that on a single day, Appellant entered two houses in the same neighborhood and assaulted three women (Complainant One, Friend, and Complainant Two). Complainant One testified that a man she did not know, Appellant, appeared outside her home at the same time as Friend. Complainant One testified that he seemed "very happy," "just real jovial," and "very, very upbeat." She also testified that "he could have been high, [she] didn't know." Friend described his demeanor outside similarly as "jovial, friendly." Complainant One testified that he entered her home without her consent, slammed the door on Friend, and locked it, leaving Friend outside. Complainant

---

[2]*See* Tex. Penal Code Ann. § 30.02(a)(1), (3), (b)(1), (c)(2) (West 2011).

One then testified that Appellant kissed her, French-kissed her, slobbered on her, and bent her backwards over a table, pressing his body on top of hers. She bit him, holding "on as hard as [she] could." Meanwhile, Friend managed to kick the door open and pulled and shoved Appellant off Complainant One. Appellant grabbed Friend as he was falling to the floor, and they struggled. He tried to kiss her but was not successful. She forced him off her with her legs, he fell backward, and he jumped up and ran out the door.

Complainant Two testified that she went out her front door, and a stranger with "blood on his mouth" who "looked lost" walked towards her, telling her that someone was trying to kill him. He grabbed her arms, pinned her down on the ground, touched her breasts, tried to kiss her, and took her shorts off. She escaped and ran into her house, but he followed her. They wrestled more inside, but then he saw a bottle of Gatorade on her bar. She told him to go get it. When he walked toward the bottle, she ran out the front door, grabbed her shorts, and put them on as she ran. She met a police car in the street, and the police found Appellant in her house. Complainant Two testified that Appellant might have been high or "crazy."

Appellant's Aunt Doris testified that she did not believe that he was in his right mind when he committed these crimes because of drugs. Similarly, his Aunt Sandra testified that because of "his demeanor at that time, . . . he probably was on—had some stuff in him" and that embalming fluid, also called "wet," is what she had heard he was using at the time of the offenses. She testified that

3

she believed that he was on "some kind of drug" at the time of the offenses "because he ain't that type of person to hurt nobody."

Appellant's mother also testified that "he's not that type of person," "he wasn't in his right mind," "[he] never would have [done something] like that if he was in his right mind," and "he had to be on something that disfigured his mind. He had to because he doesn't do things like that." She further testified that she had told the investigating officer that Appellant

> is a good kid, and he must have been on wet [at the time of the offenses]. That's a drug that . . . takes away people's memory, and they do stuff that they are unaware of. So he had to be on something like that, because some drugs you can take and you know what you're doing, but when you take wet, that wet freezes your mind and you don't know nothing that happens during that time until you've come down off of it.

She also said that she had seen him before the offenses at home and that even though he had spoken to her, he had "looked a little strange." She additionally testified that she knew Appellant did not "even remember doing it" and that "[i]t was a random act because he was loaded, because he was high. That's the only reason." She further testified that most people who are on drugs and who commit crimes have mental health problems and that he has mental health problems.

On cross-examination by the prosecutor, the following transpired,

Q. You stated that [Appellant] must have been on drugs because he doesn't do things like this; is that correct?

A. That's correct.

4

Q. Are you aware of the sexual assault charge that [Appellant] had from 1997?

A. No. I can't remember, no. I'm not aware of a sexual assault charge.

Q. Are you aware that he was accused of penetrating the female sexual organ of . . . a child younger than 17 years of age, who was not [his] spouse . . . , by inserting his penis into her female sexual organ?

A. No. I don't know that case. That's when he was really young you talking about?

Q. Well, in 1997.

A. '97, 2007 . . . . No. I remember that they had a case—I remember that they had a case, but that girl's name—I don't know the people's name, but I know—that may not be the same case. A girl was his girlfriend and that's all I know about a case like that, and that case right there was dropped.

Q. He pled to unlawful restraint and received six months in jail.

A. Unlawful restraint. Oh, okay. That case, I believe that was his girlfriend, and I think that the girlfriend said that [Appellant] didn't do nothing, but since everybody does, I mean—

Q. Okay.

A. That's all.

. . . . .

Q. So you were not aware that he is accused of sexually assaulting a girl under the age of 17 . . . with two other men, locking her in a house and not allowing her to leave? You're not aware of that?

A. I'm aware that he was with his girlfriend. That's what I'm aware. That's all I know.

Q. So you think the girl in this case was his girlfriend?

A. Yes.

5

**Impeachment Complaint Not Preserved**

Appellant contends that the trial court erred by allowing the State to impeach his mother with "alleged details of [his] 2000 conviction for unlawful restraint." But Appellant did not raise that complaint in the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[3] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[4] A reviewing court should not address the merits of an issue that has not been preserved for appeal.[5]

Because he did not raise his complaint in the trial court, Appellant has forfeited this issue. We therefore overrule Appellant's first issue.

**Complaint of No Withdrawal of Guilty Plea Forfeited**

In his second issue, Appellant complains that the trial court erred by not sua sponte withdrawing his guilty plea in each case when "it became apparent that he [could not form] the specific intent to commit" the assault-based

---

[3]Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[4]Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).

[5]*Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

6

burglaries.

A trial court has no duty to sua sponte withdraw a defendant's guilty plea absent a timely request to do so, even if evidence is presented that reasonably and fairly raises an issue as to his guilt.[6]  If the defendant fails to timely request that the trial court withdraw his plea, he forfeits his right to complain on appeal that the trial court should have done it for him.[7]  Appellant did not raise this complaint in the trial court, nor did he ask to withdraw his plea in the trial court. He has therefore forfeited this issue.  We overrule Appellant's second issue.

**Conclusion**

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 26, 2016

---

[6]*Mendez v. State*, 138 S.W.3d 334, 345, 350 (Tex. Crim. App. 2004).

[7]*Id.*; *Martinez v. State*, No. 02-04-00019-CR, 2004 WL 1798091, at *2 (Tex. App.—Fort Worth Aug. 12, 2004, no pet.) (mem. op., not designated for publication).

7