

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00300-CR
_____

GERION HANDSBOROUGH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1753617R

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Gerion Handsborough was convicted of one count of aggravated assault with a deadly weapon (knife or sharp object) and sentenced to twenty years in prison. At trial, Handsborough testified that he had acted in self-defense. He now appeals, claiming that (1) the evidence is insufficient to support the jury's decision to reject his self-defense claim, and (2) the jury charge failed to place on the State the burden of "disproving beyond a reasonable doubt" that he had acted in self-defense. We affirm.

## I. Background

### A. The State's Evidence

John Farley was working as a conductor on the Trinity Railway Express in the summer of 2021. The TRE usually runs between Fort Worth and Dallas. On the evening of June 18, the train's last run would end at the halfway point between the two cities before being shunted off to a train yard in Irving. As a courtesy, Farley's practice was to warn passengers that the train was not going all the way to Dallas.

Handsborough was the first passenger on the train as it sat at the last station in Fort Worth. Farley approached him and said that the train was not going all the way to Dallas. Handsborough responded with a "dead stare," so Farley asked him if he was okay. Handsborough pulled a pocketknife out of his pocket and unfolded it. He started swinging the knife, stabbing Farley four or five times in the back of the head. Farley screamed for the train engineer and pushed Handsborough. As he pushed

Handsborough into the corner, Farley felt more injuries to his side. Farley called 911 after Handsborough left the train.

The engineer, Joe Banda, was in the cab of the train doing paperwork when he heard yelling and things falling over from the opposite end of the train car. Banda moved to where he could see Farley and another man wrestling with each other. Banda saw the two men separate and Handsborough run away with a box cutter in his hand. He tried to stop Farley's bleeding with gauze pads and paper towels but was unable to do so.

Paramedic Daniel Richmond arrived and found a large amount of blood on the steps and on the floor of the train. Richmond saw that Farley had a large laceration to the back of his head and another one on his side—from his armpit all the way down to his hip. Farley was taken to the hospital where he received twelve stiches and seventeen staples on his head and eighty-five staples to close the wound on the left side of his body.

Handsborough ran away after the assault. Police received a description of Handsborough from Farley and put out the information on the police radio. Handsborough was eventually located and identified on a train that was heading back to the original station. He was detained and his items were searched. Police did not find a weapon.

Farley has not yet returned to work. He suffers from post-traumatic stress disorder and memory loss, receives psychiatric and physical therapy, and has endured significant anxiety.

**B. Handsborough's Testimony**

Handsborough testified and offered a different version of events. According to Handsborough, he boarded the train to head back to his mother's house in Frisco. He was familiar with Farley and said that he had never had issues with him in the past. Farley asked him several times if he was going to Dallas, but Handsborough ignored him—partly because he was tired but also because of "social distancing."

Handsborough testified that Farley tapped his shoulder, then grabbed him, and then started shaking him. Handsborough stood up and looked at him, but Farley hit him in the chest with his shoulder. Handsborough was knocked over and cascaded down the stairs. He got on his feet and started to walk back up the stairs. Farley kicked him in the forehead, and again Handsborough fell down the stairs. Handborough went back up the stairs and tried to grab Farley and restrain him. Farley then threw Handsborough in the seat and pinned him in, and the two began wrestling. Handsborough said that he felt the "need" to grab his knife and start "cutting." Farley continued wrestling with Handsborough but then ran away.

## II. Legal Sufficiency

In his first issue, Handsborough challenges the legal sufficiency[1] of the evidence to support his self-defense claim, arguing that the State's evidence was not enough to "negate [his] version of events beyond a reasonable doubt." We disagree.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.

---

[1]Although Handsborough mentions factual sufficiency with the discussion of his first issue, he seeks an acquittal, which corresponds to a legal-sufficiency challenge.

2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

After the defendant has introduced some evidence supporting a defense under Section 2.03 of the Penal Code, the State bears the burden of persuasion to disprove it. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (explaining that a conviction produces an implicit finding against the defensive theory). This burden does not require the State to introduce evidence disproving the defense; rather, it requires the State to prove its case beyond a reasonable doubt. *Id.* To determine evidentiary sufficiency to disprove a nonaffirmative defense, the appellate court asks

> whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the [defensive] issue beyond a reasonable doubt.

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

## B. Analysis

In his brief, Handsborough concedes that there were "essentially two versions" of what happened between Farley and himself, but he argues that the evidence was "in a state of equipoise" and that Farley's testimony was not sufficient to negate Handsborough's side of the story. But it was the jury's prerogative to accept or reject

6

any of Handsborough's evidence on the issue of self-defense. *See Saxton*, 804 S.W.2d at 913–14. It was not irrational for the jury to disbelieve Handsborough's account that Farley[2] would suddenly and without warning shove and kick Handsborough down a flight of stairs. In addition, Handsborough immediately fled the scene; a jury is entitled to disbelieve a defendant's post-event self-defense explanation if his first action following the event is to run away. *See Hernandez v. State*, No. 03-14-00413-CR, 2015 WL 3858240, at *7 (Tex. App.—Austin June 16, 2015, no pet.) (mem. op., not designated for publication) (holding that evidence that defendant fled the scene and made no attempt to inquire as to victim's condition undercut her self-defense claim). Given the evidence, the jury was entitled to believe that Handsborough was irritated by Farley's talking to him (which Handsborough admitted) and attacked Farley, not the other way around. *See Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd) (holding that defendant "acted out of anger, not protective instinct").

Further, even if the jury believed Handsborough's testimony that Farley started a fight by pushing Handsborough and then kicking him down the stairs, the jury was in no way compelled to accept Handsborough's testimony that deadly force was a justifiable response. Deadly force in self-defense is justified only when a person reasonably believes the force is immediately necessary to protect the actor against the

---

[2]Although Farley denied ever having met him, Handsborough claimed that he and Farley had interacted on the train for about twelve years. Moreover, the evidence showed that Farley had worked on the train "[o]ver five years."

other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Tex. Penal Code Ann. § 9.32. According to Handsborough's testimony, Farley shoved him down the stairs and, when he got back up, kicked him in the forehead, causing Handsborough to tumble down the stairs again. Deadly force was simply not a justifiable response to Farley's alleged actions—even if they had occurred. Handsborough never testified he was in fear of his life or feared suffering serious bodily injury. In fact, he told the jury that he simply felt the "need" to start cutting Farley. The jury was free to reject Handsborough's theory that his desire to attack Farley was justified by Farley's actions. *See Hall v. State*, 640 S.W.3d 333, 346 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (holding that jury could rationally regard defendant's use of deadly force as an unreasonable response to victim's hitting defendant once in the face); *Bundy v. State*, 280 S.W.3d 425, 434–35 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding that victim's attempt to punch defendant did not constitute deadly force such that would justify the defendant's stabbing of the victim).

Having found the evidence legally sufficient to support the jury's decision to reject Handsborough's self-defense claim, we overrule his first issue.

### III. Charge Error

In his second issue, Handsborough claims that the jury charge failed to allocate to the State "the burden of disproving beyond a reasonable doubt" that he acted in self-defense. The State responds that the jury was properly instructed, and we agree.

Section 2.03(d) of the Penal Code provides, "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." Tex. Penal Code Ann. § 2.03(d). Self-defense is a defense. *Id.* § 9.31. *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (noting that court of appeals "properly concluded that the failure to apply the law of self-defense to the facts of the case and to instruct the jury to acquit if they held a reasonable doubt on self-defense was error").

The pertinent self-defense application paragraph in the jury instructions reads as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day of June, 2021, in Tarrant County, Texas, the Defendant, Gerion Handsborough, did then and there intentionally or knowingly cause bodily injury to John Farley by cutting or stabbing John Farley, and the Defendant did use or exhibit a deadly weapon during the commission of the assault, namely, a knife or a sharp object, that in the manner of its use or intended use was capable of causing death or serious bodily injury, *but you further find from the evidence, or you have a reasonable doubt thereof*, that at that time the defendant reasonably believed he was under attack, if any, from John Farley, and that the defendant reasonably believed, as viewed from his standpoint, that such deadly force as he used, if any, was immediately necessary to protect himself against such attack, and so believing, he cut or stabbed John Farley with a deadly weapon, namely a knife or sharp object, that in the manner of its use or intended use was capable of causing death or serious bodily

injury, then you will acquit the defendant and say by your verdict "Not Guilty." [Emphasis added.]

Handsborough argues that this instruction "fails to inform the jury" that it had to acquit him if it believed his actions were justified or had a reasonable doubt. But that is precisely how the court charged the jury. Accordingly, there was no error. *See Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979) (op. on reh'g) (holding charge that "required the jury to acquit appellant if they believed that he was acting in self-defense or the jury had a reasonable doubt thereof" was proper); *Goodson v. State*, No. 05-15-00143-CR, 2017 WL 1360193, at *11 (Tex. App.—Dallas Apr. 12, 2017, pet. ref'd) (mem. op., not designated for publication) (same).

## IV. Conclusion

Having overruled Handsborough's two issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 28, 2023