

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00069-CR

DONTE WORDLAW                                      APPELLANT

V.

THE STATE OF TEXAS                                  STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1365043D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Donte Wordlaw appeals his conviction and eighteen-year sentence for aggravated robbery with a deadly weapon.[2] In four issues, he argues that the trial court erred by admitting evidence obtained from a search of his cell phone and from of an out-of-court identification of him by the victim, that

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).

the jury charge in the guilt-innocence phase of the trial was erroneous, and that the evidence is insufficient to support his conviction. We affirm.

## Background Facts

One afternoon in March 2014, A.Z. (Alexis)[3] walked through the parking lot of her apartment complex in Arlington while intending to get in a van and leave for work. When she reached the van, she noticed a man approaching her. The man was black, was a little taller than her, and was wearing jeans and a white long-sleeved shirt that had brown and green colors on the sleeves.

The man asked to use Alexis's cell phone, which she had in her purse. Believing that the man wanted to steal the phone, Alexis told him that she did not have one. The man then pulled a gun out of his jeans, pointed it at Alexis, told her that he was going to shoot her, and asked for her purse. Fearing for her life, she gave the purse to him.[4] The man told Alexis to not follow him and again threatened to shoot her. She went to an office at the apartment complex, and one of the complex's employees called the police.

When Arlington police officer Sebastian Lemus arrived at the complex minutes later, Alexis described her robber's appearance and stated the direction he had run after taking the purse. Officer Lemus relayed that information to other officers who were in the area.

---

[3]To protect the victim's identity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[4]The purse contained, among other items, cash and the cell phone.

2

A bystander at an apartment complex near Alexis's apartment informed an officer that a man had run into a nearby apartment. Arlington police officers John Rodermund and Damien Gary walked up to that apartment and noticed that its door was cracked open. They announced their presence and told the apartment's occupants to come out with their hands up. Men exited the apartment and represented that they lived there. They also stated that someone else had run into one of the apartment's bedrooms.

The officers entered the apartment, and appellant came out of a bedroom. He was sweating profusely and breathing heavily; he appeared to have just vigorously exerted himself.[5] The police placed appellant in handcuffs and put him in a patrol car, where another officer watched him. In the apartment, on a table, Officer Rodermund and Officer Gary found Alexis's purse. According to Officer Rodermund, he found a gun under the bed in the bedroom that appellant had walked out of.[6] And in a bathroom connected to that bedroom, the officers found a white shirt with camouflage sleeves.

Officer Lemus informed Alexis that the police had found a man sharing characteristics with her robber and had retrieved her purse. She rode in his

---

[5]Officer Gary testified that appellant was "very wet and he was breathing hard as if he was running." He explained that between three hundred and four hundred yards separated the location where the robbery occurred and the apartment where the police found appellant.

[6]Officer Gary testified, however, that the gun was discovered on a table in a different part of the apartment.

patrol car to the location where appellant was being detained, and she immediately recognized him with complete certainty as her robber by his "clothing and his face."[7]  At the bottom of a form that the police presented to her, she wrote, "The person who was presented to me is the one who robbed me. [Based on his] body, his face, his height, his weight, and the clothing, I am [one] hundred percent sure."[8]  The police arrested appellant and returned Alexis's purse to her.

A grand jury indicted appellant with committing aggravated robbery by using or exhibiting a deadly weapon.  Appellant filed a motion to suppress evidence obtained from the police's search of his cell phone and a motion to suppress Alexis's out-of-court identification of him as her robber on the ground that the identification was impermissibly suggestive.

At trial, appellant pled not guilty.  In the course of the trial, the trial court denied appellant's motions to suppress.  A jury received the parties' evidence and arguments and found appellant guilty.  After hearing more evidence and arguments concerning his punishment, the jury assessed eighteen years'

---

[7]Alexis testified that she was "[one] hundred percent sure" about the identification.  She later testified that when the police presented appellant to her, he did not have a shirt on, and he had handcuffs on.  Officer Lemus testified that Alexis's identification of appellant occurred from thirty to forty feet away and that appellant was wearing a shirt at that time.

[8]Alexis wrote in Spanish.  At trial, an interpreter translated the words into English.

confinement.  The trial court sentenced appellant accordingly.  He brought this appeal.

## Search of Appellant's Cell Phone

In his first issue, appellant argues that the trial court erred by denying his motion to suppress evidence related to the search of his cell phone.  In that motion, he contended,

> [T]he evidence seized and obtained was the result of a search of [appellant's] cell phone pursuant to a search warrant issued without probable cause in violation of [his] constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Art. I, Section 9, of the Texas Constitution, and Tex. Code Crim. [Proc.] [a]rt. 38.23.  Said search was not the result of actual consent by the [appellant].  Further, the scope of said search exceeded that authorized by the warrant.

After the jury found appellant guilty but before the punishment phase of his trial began, he sought a ruling on this motion.  The State explained that it intended to present evidence obtained from the search and that it would be "comfortable allowing the Court to decide the motion simply based on reading the search warrant itself," without hearing testimony.  Appellant's counsel then stated, "Judge, it's a challenge . . . based on the four corners of the warrant.  So I believe . . . the proper thing to do is for you to look at the warrant."  The State introduced an exhibit that contained the warrant and the affidavit supporting it, and after reviewing that exhibit, the trial court denied the motion to suppress "based on the four corners of the document as presented."  Following this ruling, during the punishment phase of the trial, the State presented evidence that the

5

search of appellant's cell phone revealed photographs that depicted guns and showed him possessing cash and making what appeared to be gang signs.

On appeal, appellant contends that the warrant did not authorize the search of the phone and that the search was therefore unconstitutional. He asserts, "The warrant . . . does not explicitly order, command, or authorize the search of [his] cell phone. . . . The warrant only commands the officers to retain the cell phone until further order of the court."[9]

The State contends, in part, that appellant forfeited this argument by not raising it in the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd); *see also Krause v. State*, 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[A] motion to suppress must meet all of the requirements of an objection, that is, it must be timely and sufficiently specific to inform the trial court of the complaint."). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial

_____

[9]The warrant is titled "EVIDENTIARY SEARCH WARRANT." The warrant describes and depicts a cell phone but does not expressly command or authorize a search of it. Based on our holding below, we do not address the State's argument that the warrant implicitly authorized the search.

6

court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 263. The issue raised on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Although appellant argues on appeal that the search warrant was "insufficient because it did not order, authorize, or command a search of any person, place, or thing," he did not explicitly make this argument in the trial court either in his written motion to suppress or in the brief exchange that led to the trial court's denial of the motion. Appellant argues that his appellate argument is implicit in the statement within his written motion that the "scope of said search exceeded that authorized by the warrant." For two reasons, we disagree.

First, appellant's undeveloped contention in the trial court that the "scope of said search exceeded *that authorized by the warrant*" appeared to imply his recognition that the warrant authorized some search. [Emphasis added.] We cannot conclude that this statement alone made appellant's appellate argument—that the warrant did not authorize *any* search of his phone—apparent to the trial court. *See* Tex. R. App. P. 33.1(a)(1)(A); *Sanchez*, 418 S.W.3d at 305.

Second, appellant's statements about the motion on the record at trial, in which he stated that the challenge was "based on the four corners of the warrant," do not indicate that he was arguing that the warrant did not authorize

7

any search. Rather, the trial court likely construed appellant's "four corners" argument as relating to another complaint in his written motion—that the search warrant was not supported by probable cause—because appellant had stated in the motion, "Probable cause sufficient to support a search warrant exists *if the facts contained within the four corners of the search warrant affidavit* and the reasonable inferences drawn therefrom justify the [magistrate's] conclusion that the object of the search is probably on the premises at the time of the warrant's issuance." [Emphasis added.] Consistent with appellant's limited use of the "four corners" language in the trial court, Texas courts have used such language to address the adequacy of an affidavit to establish probable cause. *See, e.g.*, *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *Whitemon v. State*, 460 S.W.3d 170, 174 (Tex. App.—Fort Worth 2015, pet. ref'd).

Nothing from the written motion, the exchange at trial about the motion, or the trial court's ruling establishes that it was apparent that appellant made (or that that the trial court ruled on) an argument that the search warrant did not authorize any search of his cell phone. Thus, we conclude that he forfeited that argument, and we overrule his first issue. *See* Tex. R. App. P. 33.1(a); *Sanchez*, 418 S.W.3d at 305; *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (concluding that when a defendant failed to object to the admission of a statement at a motion to suppress hearing on the ground for suppression raised on appeal, the issue was not preserved); *Rothstein v. State*, 267 S.W.3d

8

366, 373–74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (concluding that because a defendant's appellate argument did not comport with any objection raised in his motion to suppress or articulated at the suppression hearing, he failed to preserve error).

**Alexis's Identification of Appellant**

In his second issue, appellant contends that the trial court erred by denying his motion to suppress Alexis's out-of-court identification of him as her robber because the identification was allegedly impermissibly suggestive. During the trial, appellant filed a motion in which he objected to the identification on the basis that Alexis had been unfairly influenced by the police. Before the State began presenting evidence concerning appellant's guilt, the trial court stated that it would carry this motion with the trial. After the State rested its case, the trial court denied the motion.

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial denies the accused due process of law. *Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Gilmore v. State*, 397 S.W.3d 226, 234 (Tex. App.—Fort Worth 2012, pet. ref'd). Whether a pretrial identification procedure was impermissibly suggestive is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor; thus, we review the issue de novo. *See Gilmore*, 397 S.W.3d at 234; *see also Davis v. State*, No. 02-12-00163-CR, 2013 WL 5781489, at *7 (Tex. App.—Fort Worth Oct. 24, 2013,

9

pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 135 S. Ct. 172 (2014).

When faced with a challenge to an out-of-court identification, we first consider whether the identification procedure employed by the police was impermissibly suggestive. *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1176 (1996); *Gilmore*, 397 S.W.3d at 234; *Davis*, 2013 WL 5781489, at *7. Appellant bears the burden to show by clear and convincing evidence that the procedure was impermissibly suggestive. *See Davis*, 2013 WL 5781489, at *7; *Tucker v. State*, No. 02-12-00099-CR, 2013 WL 2340354, at *3 (Tex. App.—Fort Worth May 30, 2013, no pet.) (mem. op., not designated for publication).

If we determine the identification was impermissibly suggestive, we then consider whether the suggestive procedure created a substantial likelihood of irreparable misidentification. *Gilmore*, 397 S.W.3d at 234; *see Davis*, 2013 WL 5781489, at *7. Factors affecting the likelihood of misidentification include the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the witness's level of certainty during the confrontation, and the length of time between the offense and the confrontation. *Tucker*, 2013 WL 2340354, at *3.

As one of our sister intermediate appellate courts recently explained,

Although "on-the-scene" confrontations, also referred to as "show-up" identifications, have some degree of suggestiveness, their use is necessary in cases where time is of the essence in catching a

10

suspect and an early identification is aided by the fresh memory of the victim. Several benefits may be attained from this procedure. First, by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate. Second, quick confirmation or denial of identification expedites the release of innocent suspects. Third, the police are able to release any innocent suspects and continue their search for the criminal while he is still within the area and before the criminal can substantially alter his looks and dispose of evidence of the crime. Fourth, any possible prejudice resulting from such a confrontation can be exposed by rigorous cross-examination of the witness.

*Mendoza*, 443 S.W.3d at 363–64 (citations omitted); *see also Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981) (op. on reh'g) ("[T]he admission of evidence of a [one-man] showup without more does not violate due process."); *Hollins v. State*, No. 01-13-00129-CR, 2014 WL 768327, at *4–5 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, pet. ref'd) (mem. op., not designated for publication) (recognizing that "[s]ingle suspect show-up identifications can be impermissibly suggestive" but holding that such a procedure was not impermissibly suggestive given the evidence presented); *Ridge v. State*, No. 02-10-00401-CR, 2011 WL 2518842, at *4 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op., not designated for publication) (holding that an on-the-scene identification was not impermissibly suggestive although the suspects were in the back of squad cars and handcuffed when the victim identified them).

Alexis testified that because the robbery had "just happened," she was "[one] hundred percent" sure that appellant, who had been "very close" to her during the offense, was the robber when she viewed him from Officer Lemus's

11

patrol car.  Although Alexis acknowledged that appellant was in handcuffs when she identified him, she also testified that while conducting the on-the-scene identification, she signed a form provided to her by the Arlington Police Department that stated,

> 1.  The fact that this individual is being shown to you . . . should not cause you to believe that the guilty person(s) has been identified or arrested.
>
> 2.  This may or may not be the person who committed this crime.
>
> 3.  Regardless of whether or not you make an identification, the police will continue to investigate this incident.
>
> 4.  It is just as important to clear innocent persons from suspicion as it is to identify the guilty parties.
>
> 5.  You are in no way obligated to identify anyone.
>
> . . . .
>
> I have read these instructions, or they have been read to me, and I understand the instructions.  I am prepared to observe the individual that will be presented to me, *and I will follow the instructions provided on this form.*  I will complete a confidence statement explaining the results of this process.  I will explain in my own words how certain I am if an identification is made.  [Emphasis added.]

When the State asked Officer Lemus to explain the Arlington Police Department's protocol for a "field show-up," he stated,

> It is where at first we explain the documentation to the person that we are going to do the field show-up for.  For [Alexis], I explained to her in Spanish what we would be doing, just explained the form of the instructions that -- *that she does not need to make a decision.*  It is just for -- for giving information.  *It is just as important to identify someone who is not involved as it is to identify someone who is involved.*

12

I explained this all to her . . . .  And once . . . *I explained all the instructions to her*, I asked if she had any questions, [and] she said she did not.  [Emphases added.]

Officer Lemus also testified that he did not tell Alexis that the police had captured her robber[10] or influence her in any way in making her decision to identify appellant.  He explained that he gave Alexis adequate time to look at appellant so that she did not "feel any type of pressure to make a decision."  He also explained that the on-the-scene identification enabled Alexis to identify her robber within approximately twenty minutes of the time that he was dispatched to the scene of the robbery (and therefore soon after the robbery occurred).

The identification, like the offense, occurred during the afternoon and with Alexis and appellant being within a relatively short distance of each other.  And Alexis wrote on the identification form that she was assured that appellant was the robber based on his body, face, height, weight, and clothing.  Although appellant highlights that the police could have included the other men from the apartment in the on-the-scene identification, as stated above, a one man show-up, without more, does not necessarily violate due process.  *See Garza*, 633 S.W.2d at 512; *see also Stewart v. State*, 198 S.W.3d 60, 63 (Tex. App.—Fort Worth 2006, no pet.).

Officer Lemus agreed that he prefers a photographic lineup or a live lineup to an on-the-scene identification "[w]hen possible."  He explained, however, that

---

[10]Alexis testified that the police told her only "that they had found a person with the characteristics that [she] had given to them."

13

his department allows on-the-scene identifications and stated that arranging a lineup takes longer.

Considering all of these facts—including the prophylactic instructions explained to Alexis by Officer Lemus—and the benefits of on-the-scene identifications described above, we cannot conclude that appellant met his burden to show by clear and convincing evidence that this pretrial identification was impermissibly suggestive. *See Davis*, 2013 WL 5781489, at *7; *Tucker*, 2013 WL 2340354, at *3; *see also Smith v. State*, Nos. 14-08-00431-CR, 14-08-00432-CR, 2009 WL 1795078, at *3 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op., not designated for publication) (holding that an on-the-scene identification was not impermissibly suggestive when the defendant had committed a robbery, had hid in an apartment, and the identification expedited the police's investigation of the offense). In other words, we cannot conclude that appellant clearly and convincingly proved, as he contended in his motion, that the police unfairly influenced Alexis. Therefore, we conclude that the trial court did not err by denying appellant's motion to suppress the identification, and we overrule his second issue.[11]

---

[11]Because we conclude that the evidence does not establish that the identification procedure was impermissibly suggestive, we decline to analyze whether the procedure created a substantial likelihood of irreparable misidentification, including whether Alexis's description of appellant before the identification contained inaccuracies. *See Barley*, 906 S.W.2d at 34.

14

**Alleged Jury Charge Error**

In his third issue, appellant asserts that the trial court erred in the way it defined mental states in the guilt-innocence jury charge. He acknowledges that he did not object to the jury charge at trial.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). But unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is a case-by-case, fact-specific one. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at

15

172).  The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.  *Almanza*, 686 S.W.2d at 174.

The challenged charge stated in part,

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain and maintain control of property of another, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

. . . .

A person acts intentionally, or with intent, *with respect to the nature of his conduct*, or to a result of his conduct, *when it is his conscious objective or desire to engage in the conduct* or cause the result.

A person acts knowingly, or with knowledge, *with respect to the nature of his conduct* or to circumstances surrounding his conduct *when he is aware of the nature of his conduct* or that the circumstances exist.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  [Emphases added.]

Appellant contends that "aggravated robbery as charged in this case is a result of conduct offense" and that the trial court "erred by including the culpable mental state instruction for nature of conduct offenses in its jury charge."  He asserts that the "inclusion of the additional jury instructions permitted the jury to consider [his] conduct without regard to whether [he] intended the consequences of the act."

As the State argues, however, the mental state of Alexis's robber was not a contested issue at trial; appellant did not contend that any of the robber's actions created ambiguity concerning his intent or knowledge, nor did he

16

generally challenge Alexis's testimony that she had been robbed in the manner she testified to. Rather, the critical issue at trial was the robber's identity as determined, in part, by whether Alexis's identification of appellant as the robber was credible. During appellant's opening statement in the guilt-innocence phase, his counsel stated in part,

> I think the important thing is to listen to see whether or not there's proof beyond a reasonable doubt that [appellant] committed these crimes he's accused of.
>
> *I believe that the evidence will show that, basically, this is all based on one mistaken ID, and that was the end of the investigation.*
>
> . . . .
>
> I'd like to . . . ask you to listen very carefully to the testimony and see if you're convinced that [appellant] and no one else committed this crime he's accused of committing. [Emphasis added.]

Similarly, during appellant's closing argument concerning his guilt, his counsel stated in part,

> [T]oday we could talk about every element of the offense, but this has been a fairly brief trial *and almost all the testimony that we've decided to dispute in this concerns who did it.*
>
> . . . .
>
> So I told you you'd have to decide this at the beginning whether it's proved beyond a reasonable doubt, whether there's enough proof for you to find that [appellant] and no other person [committed the robbery], because there isn't any testimony that there's more than one person involved, no other person stuck up [Alexis] that day. So you've heard what evidence there is.
>
> . . . .

. . . [T]his whole case is based on [Alexis's] identification with one guy standing there.  [Emphasis added.]

Considering the state of the evidence and the fact that the robber's identity, not his intent or knowledge, was the critical, contested issue at trial, we cannot conclude that appellant suffered egregious harm even assuming that the jury charge was erroneous.  *See Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 171; *see also Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of [the defendant] in touching [the child victim], while it was a part of the State's required proof, was not a contested issue and consequently [the defendant] could not be egregiously harmed by the definition of the intentional and knowing state of mind."); *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.—Dallas 1997, pet. ref'd) ("Failing to include a culpable mental state in an application paragraph does not deny a defendant a fair and impartial trial when the defendant's culpable mental state is not a contested issue."); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'").  We overrule appellant's third issue.

## Evidentiary Sufficiency

In his fourth issue, appellant argues that the evidence is insufficient to sustain his conviction because Alexis did not recognize him at trial as her robber.

18

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

Twice during Alexis's testimony, when the State asked her whether she saw the man who had robbed her in the courtroom, she answered that she did not. But Alexis's inability to identify appellant in court as the person who had robbed her did not foreclose the jury's ability to convict appellant. *See Adams v. State*, 418 S.W.3d 803, 810 (Tex. App.—Texarkana 2013, pet. ref'd) ("The lack of a formal, in-court identification does not necessarily render the evidence insufficient to establish identity."); *Meeks v. State*, 897 S.W.2d 950, 954–55 (Tex. App.—Fort Worth 1995, no pet.) (holding that the evidence was sufficient to identify the defendant as a sexual-assault perpetrator even though there was no in-court identification).

The evidence showed that Alexis had face-to-face contact with her robber and that on the same afternoon as the robbery occurred, she identified appellant with complete certainty as the perpetrator. At trial, she also identified the shirt

19

that the robber had worn, which the police found in a bathroom connected to the apartment's bedroom that appellant had walked out of, and the gun that the robber had used, which Officer Rodermund testified that he found underneath the bed in the bedroom that appellant had walked out of.

Alexis told Officer Lemus that appellant had walked briskly and then had run away from the location of the robbery. Officer Rodermund testified that when he reached the apartment that a bystander had directed him to, the apartment's occupants said that someone had run into one of their bedrooms. Appellant eventually walked out of a bedroom while sweating profusely and breathing heavily; he looked like he had just vigorously exercised. In that apartment, the police found Alexis's purse. The address listed on appellant's driver's license did not match the address of that apartment.

Finally, the trial court admitted a recording of a telephone call that appellant had made to a woman while he was confined after his arrest. During the call, appellant asked the woman, "What happened?" The woman stated that she had attempted to drive to appellant when he was "running" but that she had been unable to do so. The woman asked, "So you had the gun?" Appellant responded affirmatively and then said that he had gone into a "house" where people had "told on [him]." He acknowledged that his situation was "going to get real, real fast."

Although the record contains other evidence that a factfinder could have weighed against a guilty verdict, we conclude that viewing all of the evidence in

20

the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant committed the aggravated robbery. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. Therefore, we hold that the evidence is sufficient to support appellant's conviction, and we overrule his fourth issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 29, 2015