ACCEPTED
02-17-00221-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/21/2017 10:48 AM
DEBRA SPISAK
CLERK

# IN THE COURT OF APPEALS FOR THE
## SECOND COURT OF APPEALS DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ASPEN WARREN,** | § | |
| **APPELLANT** | § | |
| | § | |
| **V.** | § | **NO. 02-17-00221-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

12/21/2017 10:48:03 AM

DEBRA SPISAK
Clerk

*APPEALED FROM CAUSE NUMBER 1443873D IN THE 396TH JUDICIAL DISTRICT COURT OF TARRANT COUNTY, TEXAS; THE HONORABLE GEORGE GALLAGHER, JUDGE PRESIDING.*

## § § §
## STATE'S BRIEF
## § § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction

No Oral Argument Requested
Unless Appellant Granted
Oral Argument

STEVEN W. CONDER, Assistant
Criminal District Attorney
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 04556510
COAAppellatealerts@tarrantcountytx.gov

MICHELE HARTMANN, Assistant
Criminal District Attorney

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................................ ii

STATEMENT OF THE CASE.......................................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ....................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

SUMMARY OF STATE'S ARGUMENTS ..................................................................... 6

STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR:
   SUFFICIENCY ......................................................................................................... 7

     A.     Standard of Review ....................................................................................... 7
     B.     Evidence Supports Jury's Verdict................................................................. 8

STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR:
   JAIL TELEPHONE CALL - RULE 403.................................................................12

     A.     Proper Admission of Jail Telephone Call between
             Appellant and his Mother - Rule 403 ...........................................................13
     B.     Reversible Error Analysis.............................................................................17

STATE'S REPLY TO APPELLANT'S THIRD POINT OF ERROR:
   INTERVIEW - RULE 403 ......................................................................................21

     A.     Proper Admission of Interview- Rule 403.....................................................22
     B.     Reversible Error Analysis.............................................................................25

CONCLUSION AND PRAYER ......................................................................................29

CERTIFICATE OF SERVICE .......................................................................................29

CERTIFICATE OF COMPLIANCE ..............................................................................30

# INDEX OF AUTHORITIES

CASES                                                                                           PAGES

*Aguilar v. State,*
    468 S.W.2d 75 (Tex. Crim. App. 1971) .......................................................................... 9

*Allridge v. State,*
    762 S.W.2d 146 (Tex. Crim. App. 1988), *cert. denied,*
    489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).............................. 17, 25

*Baker v. State,*
    2003 WL 21404076 (Tex. App. – Amarillo June 18, 2003,
    pet. refused).................................................................................................................10

*Brooks v. State,*
    323 S.W.3d 893 (Tex. Crim. App. 2010).................................................................. 7

*Brown v. State,*
    270 S.W.3d 564 (Tex. Crim. App. 2008), *cert. denied,*
    556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009)................................... 7

*Bush v. State,*
    628 S.W.2d 441 (Tex. Crim. App. 1982)...................................................................23

*Clayton v. State,*
    235 S.W.3d 772 (Tex. Crim. App. 2007)................................................................. 8

*Davis v. State,*
    329 S.W.3d 798 (Tex. Crim. App. 2010)............................................................. 14, 23

*DiCarlo v. State,*
    2009 WL 2476630 (Tex. App. – Austin August 14, 2009, pet. refused) ........15

*Easley v. State,*
    424 S.W.3d 535 (Tex. Crim. App. 2014)............................................................. 18, 26

*Erazo v. State*,
144 S.W.3d 487 (Tex. Crim. App. 2004)...................................................... 14, 22

*Gallo v. State*,
239 S.W.3d 757 (Tex. Crim. App. 2007), *cert. denied*,
553 U.S. 1080, 128 S.Ct. 2872, 171 L.Ed.2d 813 (2008)............................... 13, 22

*Gardner v. State*,
306 S.W.3d 274 (Tex. Crim. App. 2009), *cert. denied*,
562 U.S. 850, 131 S.Ct. 103, 178 L.Ed.2d 64 (2010)..................................... 9

*Gardner v. State*,
2015 WL 6784270 (Tex. App. – Dallas November 6, 2015, no pet.)...............16

*Gilmore v. State*,
397 S.W.3d 226 (Tex. App. – Fort Worth 2012, pet. refused)............................. 9

*Hilburn v. State*,
312 S.W.3d 169 (Tex. App. – Fort Worth 2010, no pet.)....................................11

*Jackson v. Virginia*,
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)..................................... 7

*Jennings v. State*,
2017 WL 3633992 (Tex. App. – Fort Worth August 24, 2017).........................25

*King v. State*,
953 S.W.2d 266 (Tex. Crim. App. 1997)................................................... 18, 26

*Lancon v. State*,
276 S.W.3d 518 (Tex. App. – San Antonio, pet. refused) ...................................10

*Laster v. State*,
275 S.W.3d 512 (Tex. Crim. App. 2009)....................................................... 8

*Ledesma v. State*,
993 S.W.2d 361 (Tex. App. – Fort Worth 1999, pet. refused)...........................10

*Lopez v. State,*
2003 WL 1922430 (Tex. App. – Austin April 24, 2003, no pet.)......................25

*Martinez v. State,*
327 S.W.3d 727 (Tex. Crim. App. 2010), *cert. denied,*
563 U.S. 1037, 131 S.Ct. 296, 180 L.Ed.2d 253 (2011) ............................... 13, 22

*Montgomery v. State,*
810 S.W.2d 372 (Tex. Crim. App. 1990).............................................. 15, 23

*Motilla v. State,*
78 S.W.3d 352 (Tex. Crim. App. 2002) ............................................... 18, 26

*Murry v. State,*
457 S.W.3d 446 (Tex. Crim. App. 2015)................................................. 8

*Rich v. State,*
160 S.W.3d 575 (Tex. Crim. App. 2005).............................................. 18, 26

*Sanchez v. State,*
418 S.W.3d 302 (Tex. App. – Fort Worth 2013, pet. refused)................... 13, 22

*Solomon v. State,*
49 S.W.3d 356 (Tex. Crim. App. 2001) ............................................... 17, 26

*State v. Mechler,*
153 S.W.3d 435 (Tex. Crim. App. 2005)............................................... 14, 22

*Torres v. State,*
794 S.W.2d 596 (Tex. App. - Austin 1990, no pet.)................................ 14, 23

*Watson v. State,*
204 S.W.3d 404 (Tex. Crim. App. 2006)....................................................11

*Williams v. State,*
34 S.W.3d 587 (Tex. App. – Eastland 2000, pet. refused)................................10

*Williams v. State*,
     958 S.W.2d 186 (Tex. Crim. App. 1997)...................................................... 13, 22

*Wood v. State*,
     2013 WL 388150 (Tex. App. – Corpus Christi-Edinburg
     January 31, 2013, no pet.)...........................................................................17

*Wyatt v. State*,
     23 S.W.3d 18 (Tex. Crim. App. 2000) ........................................................ 8

*Zavala v. State*,
     401 S.W.3d 171 (Tex. App. – Houston [14th Dist.] 2011, pet. refused).........16

## STATUTES

Tex. Penal Code §19.02(b)(1), (2) ...................................................................... 8

## RULES

Tex. R. App. P. 44.2(b) ........................................................................................ 17, 26

Tex. R. Evid. 403 ................................................................................... passim

IN THE COURT OF APPEALS FOR THE
SECOND COURT OF APPEALS DISTRICT OF TEXAS

ASPEN WARREN, §
   APPELLANT §
 §
V. § NO. 02-17-00221-CR
 §
THE STATE OF TEXAS, §
   APPELLEE §

*APPEALED FROM CAUSE NUMBER 1443873D IN THE 396TH JUDICIAL DISTRICT COURT OF TARRANT COUNTY, TEXAS; THE HONORABLE GEORGE GALLAGHER, JUDGE PRESIDING.*

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

The appellant was convicted by a jury of murder. (C.R. I:131 R.R. VI:36). The trial court sentenced him to fifty years' confinement. (C.R. I:134-36; R.R. VII:17).

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe that oral argument is necessary to the Court's decisional process because the issue raised herein is primarily fact-based. However, if the appellant is granted oral argument, the State would request an opportunity to respond.

## STATEMENT OF FACTS

Sometime after 6:00 p.m. on January 27, 2016, Brittany Daniel left work as the housekeeping supervisor at the Hawthorne Suites on University Drive in Fort Worth (R.R. IV:32-33, 35). Ms. Daniel was taking Jasmine Thomas – one of her housekeepers – home to Arlington because her normal ride was unavailable. (R.R. IV:35). After first dropping off another housekeeper somewhere in Fort Worth, the women got onto Interstate 30 and headed towards Arlington. (R.R. IV:36-37).

Around this same time, the appellant picked up his girlfriend, Bri'Anna Walker, from her work at the Walgreens on the corner of McCart Avenue and Berry Street in Fort Worth. (R.R. IV:148, 152-53). Ms. Walker got into the front passenger seat while three other people – Sha'Brandon Young, Trinton Kennedy and A'Lexus Donald – got into the backseat. (R.R. IV:153). As they headed down Berry Street towards Interstate 35W, Ms. Walker noticed a chip in her passenger window tint and began arguing about it with the appellant. (R.R. IV:154, 179).[1] This argument continued as they approached Interstate 30. (R.R. IV:158).

---

1    Ms. Walker had been given the car by her stepfather, Keith Moore. (R.R. IV:150). She routinely let the appellant to drive her car, including all day on January 27th, even though Mr. Moore had forbidden it. (R.R. IV:151-52).

The appellant pulled in front of Ms. Daniel's car as he entered Interstate 30. (R.R. IV:158). Ms. Daniel switched lanes, passed the appellant, and then pulled back in front causing the appellant to hit the brakes hard. (R.R. IV:158). The appellant sped up to catch Ms. Daniel's car eventually pulling up beside her somewhere near the Eastchase exit. (R.R. IV:38, 61-62, 159). With the two cars side-by-side, Mr. Kennedy called Ms. Daniel an "ugly bitch" out his window, and she responded by flipping him off. (R.R. IV:41-42, 159). At this point, the appellant slowed down the car, rolled down Ms. Walker's window with the automatic controls, and fired two shots out the passenger window just past Ms. Walker's face. (R.R. IV:62-63, 161-63). He then sped off toward Arlington where he shared an apartment with Mr. Young and Mr. Kennedy. (R.R. IV:62, 153-54, 165).

Ms. Daniel grabbed her left side and said that she had been shot. (R.R. IV:43, 47). After pulling her car to the side of the road, Ms. Daniel hunched toward Ms. Thomas and became unresponsive. (R.R. IV:43, 45, 62). Although Ms. Thomas did not see anyone with a gun, including the man who had exchanged words with Ms. Daniel, she knew the gunshots had come from the car next to them on the highway. (R.R. IV:45-46).

When the Arlington police reached Ms. Daniel's car, she was slumped

over the center console. (R.R. IV:85). She had no pulse or breath, and her eyes were in an unreactive fixed stare. (R.R. IV:86). Ms. Daniel had a wound to her left side just below her arm. (R.R. IV:88). The police found bullet holes in the front and back driver's side doors. (R.R. IV:86, 89, 113).

Dr. Nizam Peerwani performed an autopsy on Ms. Daniel in which he removed a bullet from just under her skin in a cutaneous area. (R.R. IV:197, 200, 202). The entry gunshot wound was on Ms. Daniel's left side located 42.5 inches above her left heel and seven (7) inches left of her interior midline. (R.R. IV:202). The bullet was recovered on Ms. Daniel's right side 44 inches above her right heel and seven and one-half (7.5) inches right of her interior midline. (R.R. IV:203). Dr. Peerwani described the bullet path as traveling left to right, slightly backwards, and very slightly upwards. (R.R. IV:203). He described the entry wound as irregular and consistent with passing through an intermittent target. (R.R. IV:202).

The bullet pierced Ms. Daniel's diaphragm, perforated her stomach, and went through the head of her pancreas and her right liver lobe before ending up in her right flank. (R.R. IV:205). These injuries caused serious internal bleeding which resulted in Ms. Daniel's death. (R.R. IV:206, 208).

Firearms examiner Jamie Becker examined the bullet recovered during

4

Ms. Daniel's autopsy. (R.R. IV:223). After looking at its design feature, measurements and weight, as well as its features from the firing process, Ms. Becker generated a list of possible firearms that fired this bullet, including a .40 caliber Smith & Wesson. (R.R. IV:224).

Keith Moore owned a .40 caliber Smith & Wesson semiautomatic which had gone missing from its storage contained sometime before Christmas 2016. (R.R. IV:131, 133). The appellant was often at his house when neither Mr. Moore nor his wife were at home. (R.R. IV:131). Mr. Moore doubted that anyone broke into his house to steal his gun since nothing else was taken, there were no signs of forced entry, and his home is protected by burglar bars and a German shepherd. (R.R. IV:135).

Detectives Steven Griesbach and Byron Stewart interviewed the appellant on February 3, 2016. (R.R. V:46-48). The appellant first blamed the shooting on Mr. Young, but eventually admitted that he fired the shot which killed Ms. Daniel in an attempt to scare her for "road-raging" him. (R.R. V:53-54; VIII:State's Exhibit #53).

## SUMMARY OF STATE'S ARGUMENTS

*Sufficiency:*

The evidence is sufficient to support the appellant's murder conviction.

*Jail Telephone Call - Rule 403:*

The trial court properly admitted the appellant's jail telephone call with his mother because its probative value was not substantially outweighed by any danger of unfair prejudice. Alternatively, its admission is not reversible error.

*Police Interview - Rule 403:*

The trial court properly admitted the appellant's police interview because its probative value was not substantially outweighed by any danger of unfair prejudice. Alternatively, its admission is not reversible error.

Appellant's Contention:

The appellant contends that the evidence is insufficient to support his murder conviction.

State's Reply:

The evidence is sufficient to support the appellant's murder conviction.

Arguments and Authorities:

**A.      Standard of Review**

In a sufficiency review, evidence is viewed in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  The jury as factfinder is the sole judge of the weight and credibility of the evidence presented, and is free to believe or disbelieve any testimony. *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 556

7

U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009); *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

The appellate court presumes that the factfinder resolved any conflicting inferences in favor of the prosecution, and defers to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). So long as the verdict is supported by a reasonable inference, it is within the province of the fact finder to choose which inference is most reasonable. *Laster v. State*, 275 S.W.3d 512, 523-24 (Tex. Crim. App. 2009). Reviewing courts may not employ a "divide and conquer strategy" for evaluating the evidence, in which individual facts are explained away if those facts, when considered together, support a reasonable inference proving an element of the offense. *Murry v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015).

## B.  Evidence Supports Jury's Verdict

A person commits murder if (1) he intentionally or knowingly causes the death of an individual; or (2) he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.  **Tex. Penal Code §19.02(b)(1), (2)**.  A defendant's identity and criminal culpability may be proved by either direct or circumstantial evidence,

coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 286 (Tex. Crim. App. 2009), *cert. denied*, 562 U.S. 850, 131 S.Ct. 103, 178 L.Ed.2d 64 (2010). A defendant's positive identification as the perpetrator, including just the testimony of a single eyewitness, is sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Gilmore v. State*, 397 S.W.3d 226, 240 (Tex. App. – Fort Worth 2012, pet. refused).

The following evidence supports the jury's verdict that the appellant fired the fatal shot which killed Brittany Daniel:

- The appellant became enraged when Ms. Daniel pulled in front of him on Interstate 30 causing him to hit the brakes. (R.R. IV:158).

- The appellant raced down the interstate to catch Ms. Daniel and eventually pulled up beside her. (R.R. IV:38, 61-62, 159).

- The appellant slowed down his car and rolled down front passenger Bri'Anna Walker's window using the automatic controls. (R.R. IV:62, 161).

- The appellant fired two shots out Ms. Walker's window before speeding off. (R.R. IV:62-63, 162-63).

- Ms. Daniel was hit in her left side just below her left arm by a bullet coming from the appellant's car. (R.R. IV:43, 45-47, 88).

- Ms. Daniel pulled off to the side of the road and soon slumped over the center console with no pulse or breath, and an unreactive fixed stare. (R.R. IV:85-86).

- The bullet traveled through numerous internal organs and caused serious internal bleeding. (R.R. IV:205-06).

- Dr. Peerwani determined that the injuries from this bullet caused Ms. Daniel's death. (R.R. IV:208).

- The police found bullet holes in the front and back driver's side doors. (R.R. IV:86, 89, 113).

- Ms. Walker testified that the shots were not fired from the backseat and that her window was not rolled down by a backseat passenger. (R.R. IV:165).

- The appellant admitted that he shot at Ms. Daniel in an attempt to scare her for "road-raging" him. (R.R. (R.R. V:53-54; VIII:State's Exhibit #53).

Put simply, the jury heard evidence that the appellant fired the gunshots which killed Ms. Daniel – evidence from which they rationally convicted him of murder. See *Lancon v. State*, 276 S.W.3d 518, 522-23 (Tex. App. – San Antonio, pet. refused) (eyewitness testimony that defendant fired fatal shots, even if hotly contested, is sufficient to support his murder conviction); *Williams v. State*, 34 S.W.3d 587, 590 (Tex. App. – Eastland 2000, pet. refused) (evidence sufficient where eyewitness identified defendant as the shooter); *Ledesma v. State*, 993 S.W.2d 361, 366-67 (Tex. App. – Fort Worth 1999, pet. refused) (sufficient evidence to support murder conviction where witness saw defendant shoot gun into car at deceased); *Baker v. State*, 2003

WL 21404076, at *1-2 (Tex. App. – Amarillo June 18, 2003, pet. refused) (not designated for publication) (sufficient evidence to prove murder where witness observed defendant approach deceased's car with a gun and shoot him five times).[2]

The appellant suggests that Ms. Walker's testimony is inconsistent with testimony that the bullet path went at a downward angle and, thus, should be discounted. See Appellant's Brief, page 9. Notwithstanding that witness credibility is an issue for jury resolution, Ms. Walker's testimony that the appellant fired the fatal shot straight out her window is consistent with Dr. Peerwani's description that the bullet traveled very slightly upwards. (R.R. IV:203). Thus, there is no reason to discount Ms. Walker's testimony.

The appellant's first point of error should be overruled.

---

[2] The State acknowledges that *Lancon* and *Ledesma* actually concern factual sufficiency reviews - a more stringent standard that essentially began with a presumption that the evidence was legally sufficient. See *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Hilburn v. State*, 312 S.W.3d 169, 174 (Tex. App. – Fort Worth 2010, no pet.).

## STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR: JAIL TELEPHONE CALLS - RULE 403

Appellant's Contention:

The appellant contends that the trial court improperly admitted jail telephone calls between him and his mother into evidence.

State's Reply:

The trial court properly admitted these jail telephone calls because their probative value was not substantially outweighed by any danger of unfair prejudice.  Alternatively, their admission is not reversible error.

Arguments and Authorities:

The State introduced recordings of telephone calls made by the appellant from the Arlington City Jail.  (R.R. V:14, VIII:State's Exhibit #51).  The trial court overruled the appellant's hearsay and rule 403 objections, and admitted them into evidence.  (R.R. V:15).  The State later published recordings of two conversations between the appellant and his sister on February 2 and 3, 2016, and portions of one conversation between the appellant and his mother on February 3, 2016.  (R.R. VI:51-52, 58, 59,

12

VIII:State's Exhibit #51).[3]

### A. Proper Admission of Jail Telephone Call between Appellant and His Mother - Rule 403[4]

The Texas Rules of Evidence provide that:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

Tex. R. Evid. 403. This rule favors the admission of relevant evidence and presumes that it will be more probative than prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010), *cert. denied*, 563 U.S. 1037, 131 S.Ct. 296, 180 L.Ed.2d 253 (2011); *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1080, 128 S.Ct. 2872, 171 L.Ed.2d 813 (2008); *Sanchez v. State*, 418 S.W.3d 302, 311 (Tex. App. – Fort Worth 2013, pet. refused). A trial court is presumed to engage in the required balancing test, and silence of the record will not imply otherwise. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

---

[3] The appellant renewed his hearsay and rule 403 objections before the State published his conversations with his sister, which the trial court again overruled. (R.R. V:52).

[4] The appellant does not challenge the admission of his recorded telephone conversations with his sister. See Appellant's Brief, page 10.

A trial court's 403 ruling is reviewed under an abuse of discretion standard. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). In making this determination, the reviewing court should consider:

- The probative value of the evidence;
- The potential to impress the jury in some irrational, yet indelible way;
- The time needed to develop the evidence; and
- The proponent's need for the evidence.

*Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

The term "probative value" refers to the inherent probative force of an item of evidence - that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation - coupled with the proponent's need for that item of evidence. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). The term "unfair prejudice" does not simply mean that the evidence will injure or prejudice the opponent's case which is, after all, the central point of offering evidence; rather, it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Davis v. State*, 329 S.W.3d at 806; *Torres v. State*, 794 S.W.2d 596, 600 (Tex. App. - Austin 1990, no pet.). Rule 403 applies only when there exists a clear disparity between the degree of prejudice arising from the offered evidence and its probative value.

14

*State*, 329 S.W.3d at 806.

In this jail telephone call, the appellant tells his mother that he admitted selling the gun and disposing of the shell casings. (R.R. V:60, VIII:State's Exhibit #51). This confirmation has probative value as a tacit admission of guilt in that he possessed the gun. See *DiCarlo v. State*, 2009 WL 2476630, at *2 (Tex. App. – Austin August 14, 2009, pet. refused) (not designated for publication) (defendant's statement that "we all make mistakes" and his failure to contradict his brother's assertion that he was intoxicated during a recorded jail telephone conversation had probative value as a tacit admission of guilt). Furthermore, the appellant's statements connecting himself to the gun make more probable that he fired the fatal gunshots; thus, having probative value in establishing his identity as the shooter. See *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (identity is not just a fact of consequence, but a truly elemental fact).

The appellant does not articulate any undue tendency arising from this telephone call that the jury's guilty verdict was due to an emotional or otherwise improper basis rather than due to this case's facts. See Appellant's Brief, pages 10-11. Thus, he has not shown "unfair" prejudice from their admission.

15

The laying of the predicate for admitting the appellant's jail telephone calls took eight pages of the record, including the defense voir dire examination of the telephone company representative. (R.R. V:8-15). The two portions of the appellant's conversation with his mother played for the jury lasted approximately five and one-half minutes. (R.R. V:59). Put simply, the State did not spend an inordinate amount of time on this telephone call.[5]

While Ms. Walker testified that the appellant fired the shot that killed Ms. Daniel, the appellant's conversation about the guns and shell casings - tacitly admitting his guilt - helps confirm that identity. (R.R. V:51-52, VIII:State's Exhibit #51). Thus, the State had a need for this evidence.

Given its probative value, its lack of any unfair prejudice, its short time duration and the State's need, the trial court did not abuse its discretion by admitting the recording of the appellant's jail telephone call with his mother. See *Zavala v. State*, 401 S.W.3d 171, 176-77 (Tex. App. – Houston [14th Dist.] 2011, pet. refused) (admission of recorded jail telephone call where defendant stated that he wanted police to find a computer he left in his truck was not an abuse of discretion where did not articulate how this admission was unfairly prejudicial); *Gardner v. State*, 2015 WL 6784270, at *3 (Tex. App. – Dallas

---

5    The appellant's two recorded conversations with his sister took approximately twenty-two minutes to play for the jury. (R.R. V:51-52, 58).

16

November 6, 2015, no pet.) (not designated for publication) (probative value of recorded jail telephone calls suggesting ways to minimize proof of defendant's culpability not substantially outweighed by danger of prejudicial effect since they did not consume an enormous amount of time or have a tendency to the suggest the jury make its decision on an improper basis); *Wood v. State*, 2013 WL 388150, at *6 (Tex. App. – Corpus Christi-Edinburg January 31, 2013, no pet.) (not designated for publication) (probative value of recorded jail telephone calls rebutting defendant's lack of knowledge not substantially outweighed by any danger of unfair prejudice).[6]

The appellant's second point of error should be overruled.

## B.    Reversible Error Analysis

The erroneous admission of evidence is generally non-constitutional error, and is not grounds for reversal unless it affects an accused's substantial rights.  *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); **Tex. R.**

---

6    The appellant also alleges that the State failed to lay the proper predicate for his jail telephone calls' admission.  See Appellant's Brief, page 10.  He has not preserved this issue for appellate review because he only made rule 403 and hearsay objections at trial.  See *Allridge v. State*, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989) (nothing preserved for appellate review where error presented on appeal differs from objection raised at trial).

**App. P. 44.2(b)**.  A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Neither the State nor the appellant has the burden to demonstrate harm; rather, the reviewing court should consider the entirety of the record in assessing harm. *Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014); *Rich v. State*, 160 S.W.3d at 577.

The appellant's jail telephone calls did not substantially sway the jury's decision because it heard significant other evidence establishing his guilt:

- The appellant became enraged when Ms. Daniel pulled in front of him on Interstate 30 causing him to hit the brakes.  (R.R. IV:158).

- The appellant raced down the interstate to catch Ms. Daniel and eventually pulled up beside her.  (R.R. IV:38, 61-62, 159).

- The appellant slowed down his car and rolled down front passenger Bri'Anna Walker's window using the automatic controls.  (R.R. IV:62, 161).

- The appellant fired two shots out Ms. Walker's window before

18

speeding off. (R.R. IV:62-63, 162-63).

- Ms. Daniel was hit in her left side just below her left arm by a bullet coming from the appellant's car. (R.R. IV:43, 45-47, 88).

- Ms. Daniel pulled off to the side of the road and soon slumped over the center console with no pulse or breath, and an unreactive fixed stare. (R.R. IV:85-86).

- The bullet traveled through numerous internal organs and caused serious internal bleeding. (R.R. IV:205-06).

- Dr. Peerwani determined that the injuries from this bullet caused Ms. Daniel's death. (R.R. IV:208).

- The police found bullet holes in the front and back driver's side doors. (R.R. IV:86, 89, 113).

- Ms. Walker testified that the shots were not fired from the backseat and that her window was not rolled down by a backseat passenger. (R.R. IV:165).

- The appellant admitted that he shot at Ms. Daniel in an attempt to scare her for "road-raging" him. (R.R. (R.R. V:53-54; VIII:State's Exhibit #53).

Put simply, the jury heard substantial evidence that the appellant fired the fatal gunshots.

Finally, the State did not refer to the appellant's telephone conversation with his mother during jury arguments; in fact, it only made two passing telephone call references regarding his use of the term "snitching" when talking with his sister. (R.R. VI:13, 14). Thus, it cannot be said that the

19

appellant's telephone conversation with his mother substantially swayed the jury's guilty verdict such that its admission constitutes reversible error.

The appellant's second point of error should be overruled.

## STATE'S REPLY TO APPELLANT'S THIRD POINT OF ERROR: INTERVIEW - RULE 403

Appellant's Contention:

The appellant contends that the trial court improperly admitted his police interview evidence.

State's Reply:

The trial court properly admitted the appellant's police interview because its probative value was not substantially outweighed by any danger of unfair prejudice. Alternatively, its admission is not reversible error.

Arguments and Authorities:

The State introduced a videotape of the appellant's interview with Detective Griesbach and Detective Stewart. (R.R. V:48-49). The appellant objected to its admission under rule 403, which the trial court overruled. (R.R. V:49).[7]

---

[7] The appellant renewed his rule 403 objection and added a hearsay objection when the State published the interview to the jury which the trial court again denied. (R.R. V:53).

## A.    Proper Admission of Interview - Rule 403

The trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.  **Tex. R. Evid. 403**.  This rule favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *Martinez v. State*, 327 S.W.3d at 737; *Gallo v. State*, 239 S.W.3d at 762; *Sanchez v. State*, 418 S.W.3d at 311.  A trial court is presumed to engage in the required balancing test, and silence of the record will not imply otherwise.  *Williams v. State*, 958 S.W.2d at 195–96.

A trial court's 403 ruling is reviewed under an abuse of discretion standard.  *State v. Mechler*, 153 S.W.3d at 439.  In making this determination, the reviewing court should consider:

- The probative value of the evidence;
- The potential to impress the jury in some irrational, yet indelible way;
- The time needed to develop the evidence; and
- The proponent's need for the evidence.

*Erazo v. State*, 144 S.W.3d at 489.

The term "probative value" refers to the inherent probative force of an item of evidence - that is, how strongly it serves to make more or less

22

probable the existence of a fact of consequence to the litigation - coupled with the proponent's need for that item of evidence. *Davis v. State*, 329 S.W.3d at 806. The term "unfair prejudice" does not simply mean that the evidence will injure or prejudice the opponent's case which is, after all, the central point of offering evidence; rather, it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Davis v. State*, 329 S.W.3d at 806; *Torres v. State*, 794 S.W.2d at 600. Rule 403 applies only when there exists a clear disparity between the degree of prejudice arising from the offered evidence and its probative value. *Davis v. State*, 329 S.W.3d at 806.

The interview culminated with the appellant admitting that he fired the gunshots at Ms. Daniel in an attempt to scare her for "road-raging" him. (R.R. V:53-54; VIII:State's Exhibit #53). Thus, it had probative value in establishing his identity as the shooter. See *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (identity is not just a fact of consequence, but a truly elemental fact). It also helps prove the appellant's motive that he was enraged and wanted to frighten her. See *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982) (although not an essential element, motive is always relevant as a circumstance tending to prove the commission of an offense).

The appellant does not articulate any undue tendency arising from his interview's admission that the jury's guilty verdict was due to an emotional or otherwise improper basis rather than due to this case's facts. See Appellant's Brief, pages 12-13. Thus, he has not shown "unfair" prejudice from its admission.

The laying of the predicate for admitting the appellant's interviews took four pages of the record where Detective Griesbach explained how they conducted the videotaped interview, including advising the appellant of his rights, and his authentication of the videotape. (R.R. V:46-49). Thus, the State did not spend an inordinate amount of time developing this evidence.[8]

The interview provided key details in confirming that the appellant was the shooter and that he intentionally fired the shots at Ms. Daniel (R.R. V:53-54; VIII:State's Exhibit #53). While Ms. Walker testified that the appellant fired the shots and multiple witnesses described the incidents leading up to the shooting, it is only in the interview where the applicant explains that he shot at Ms. Daniel to scare her for "road-raging" him – i.e., establishing his state of intent and motive.

---

[8]    The State acknowledges that the interview lasted approximately ninety minutes. (R.R. V:53, VIII:State's Exhibit #53). That time-length should not be deemed unduly lengthy given that this is a murder case.

Given its probative value, its lack of any unfair prejudice, their short time duration and the State's need, the trial court did not abuse its discretion by admitting the appellant's police interview into evidence. See *Jennings v. State*, 2017 WL 3633992, at \*10 (Tex. App. – Fort Worth August 24, 2017) (not designated for publication) (admission of defendant's police interview not an abuse of discretion because its probative value in proving her culpability was not substantially outweighed by the danger of unfair prejudice); *Lopez v. State*, 2003 WL 1922430, at \*6 (Tex. App. – Austin April 24, 2003, no pet.) (not designated for publication) (defendant's voluntary videotaped interview not so unfairly prejudicial that it substantially outweighed its probative value).[9]

The appellant's third point of error should be overruled.

## B.    Reversible Error Analysis

The erroneous admission of evidence is generally non-constitutional error, and is not grounds for reversal unless it affects an accused's substantial

---

[9]    The appellant also alleges that the State failed to lay the proper predicate for their admission. See Appellant's Brief, pages 6-7, 12, 14-17. The appellant has not preserved this issue for appellate review because he only made rule 403 and hearsay objections at trial. See *Allridge v. State*, 762 S.W.2d at 157 (nothing preserved for appellate review where error presented on appeal differs from objection raised at trial).

rights by having a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d at 577; *Solomon v. State*, 49 S.W.3d at 365; *King v. State*, 953 S.W.2d at 271. **Tex. R. App. P. 44.2(b).** Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect. *Motilla v. State*, 78 S.W.3d at 355. Neither the State nor the appellant has the burden to demonstrate harm; rather, the reviewing court should consider the entirety of the record in assessing harm. *Easley v. State*, 424 S.W.3d at 542; *Rich v. State*, 160 S.W.3d at 577.

The appellant's police interview did not substantially sway the jury's decision because it heard significant other evidence establishing his guilt:

- The appellant became enraged when Ms. Daniel pulled in front of him on Interstate 30 causing him to hit the brakes. (R.R. IV:158).

- The appellant raced down the interstate to catch Ms. Daniel and eventually pulled up beside her. (R.R. IV:38, 61-62, 159).

- The appellant slowed down his car and rolled down front passenger Bri'Anna Walker's window using the automatic controls. (R.R. IV:62, 161).

- The appellant fired two shots out Ms. Walker's window before speeding off. (R.R. IV:62-63, 162-63).

26

- Ms. Daniel was hit in her left side just below her left arm by a bullet coming from the appellant's car.  (R.R. IV:43, 45-47, 88).

- Ms. Daniel pulled off to the side of the road and soon slumped over the center console with no pulse or breath, and an unreactive fixed stare.  (R.R. IV:85-86).

- The bullet traveled through numerous internal organs and caused serious internal bleeding.  (R.R. IV:205-06).

- Dr. Peerwani determined that the injuries from this bullet caused Ms. Daniel's death.  (R.R. IV:208).

- The police found bullet holes in the front and back driver's side doors.  (R.R. IV:86, 89, 113).

- Ms. Walker testified that the shots were not fired from the backseat and that her window was not rolled down by a backseat passenger.  (R.R. IV:165).

Put simply, the jury heard substantial evidence that the appellant fired the fatal gunshots.

While the State discussed the appellant's police interview – especially in the context of motive – its arguments gave far greater focus to Bri'Anna Walker's testimony about the appellant firing the gun right in front of her, Jasmine Thomas' testimony about Brittany Daniel's last moments, and Malcolm Daniel's description of his daughter's humanity.  (R.R. VI:13-15, 29-31, 34).  Thus, it cannot be said that the appellant's videotaped interview substantially swayed the jury's guilty verdict such that its admission

27

constitutes reversible error.

The appellant's third point of error should be overruled.

## CONCLUSION AND PRAYER

The evidence is sufficient to support the appellant's conviction, and he suffered no reversible error from the admission of his recorded jail telephone call or his videotaped interview. Therefore, the State prays that the appellant's conviction be affirmed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR,
Chief, Post-Conviction

/s/ Steven W. Conder
STEVEN W. CONDER, Assistant
Criminal District Attorney
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 24073106
COAAppellatealerts@tarrantcountytx.gov

MICHELE HARTMANN, Assistant
Criminal District Attorney

## CERTIFICATE OF SERVICE

A true copy of the State's brief have been electronically served on

opposing counsel, the Hon. J. Warren St. John ([jwlawyer@aol.com](mailto:jwlawyer@aol.com)), 2020 Burnett Plaza, 801 Cherry Street, Unit No. 5, Fort Worth, Texas 76102-6810, on this, the 21st day of December, 2017.

/s/ Steven W. Conder
STEVEN W. CONDER

## CERTIFICATE OF COMPLIANCE

This document complies with the requirements of Tex. R. App. P. 9.4 because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes, and contains approximately 5160 words, excluding those parts specifically exempted, as computed by Microsoft Office Word 2013 - the computer program used to prepare the document.

/s/ Steven W. Conder
STEVEN W. CONDER

c18.warren aspen.br