

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00168-CR
_____

JOHNNY EDWARDS IV, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1717892

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

After viewing his audio-recorded confession, a Tarrant County jury convicted Johnny Edwards, IV, of the lesser-included offense of murder and sentenced him to life imprisonment. On appeal, Edwards argues that (1) the trial court abused its discretion by admitting gruesome autopsy photographs during guilt/innocence, (2) the jury charge was egregiously harmful because it failed to limit the mens rea to the result of the conduct, and (3) the trial court erred by overruling a confrontation clause objection to testimony at punishment.[1]

We find that the trial court did not abuse its discretion by admitting the autopsy photographs and that there was no jury-charge error. We further find that error, if any, in the admission of the punishment testimony that Edwards complains of was cured by the admission of the same or similar evidence without objection. As a result, we affirm the trial court's judgment.

## I. The Trial Court Did Not Abuse its Discretion by Admitting the Photographs

In his audio-recorded confession, Edwards admitted that he had texted the victim to purchase marihuana from him, went to the victim's apartment to pick it up, and shot the victim after he allegedly threatened Edwards's family. It was uncontested that the victim died from the gunshot wounds. In his first point of error, Edwards argues that the trial court erred by admitting autopsy photographs of the victim over his request "asking the [trial court] to do a balancing test

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

under gruesomeness." The trial court sustained the objection as to some but not all of the photographs.

In his first point of error, Edwards argues that the trial court erred by admitting the State's exhibits 104–106, 108–125, and 127–134. One image showed the front of the victim from the torso up to reveal the places where the victim had been shot, while another showed the victim's backside from the thighs up to reveal the gunshot exit wounds. The remaining photographs were close-up images of the gunshot wounds themselves or the bullets that were extracted from the victim's body.

"Rule 403 provides that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.'" *Sanchez v. State*, 418 S.W.3d 302, 310 (Tex. App.—Fort Worth 2013, pet. ref'd) (quoting TEX. R. EVID. 403).

Here, Edwards's Rule 403 complaint related only to the danger of unfair prejudice.[2] "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.); *Sanchez*, 418 S.W.3d at 311. "It is the burden of the party opposing the admission of the evidence to overcome this presumption by showing that the probative value

---

[2]Edwards specifically stated, "I don't think there's any duplicative [photographs] here," and the trial court noted there was no objection that any of the photographs were duplicative. Yet, on appeal, Edwards argues for the first time that the photographs "are duplicative of each other" and "are cumulative of each other." The State argues that Edwards failed to preserve those complaints, and since the record shows that Edwards did not object to the photographs being duplicative or cumulative, we agree. *See* TEX. R. APP. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial.").

of the evidence is substantially outweighed by the danger of unfair prejudice or by the other dangers listed in Rule 403." *James*, 623 S.W.3d at 547.

"The admissibility of photographs over an objection is within the trial court's sound discretion." *Sanchez*, 418 S.W.3d at 311 (citing *Paredes v. State,* 129 S.W.3d 530, 539 (Tex. Crim. App. 2004)). "Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself." *Id.* (citing *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003)). "Photographs that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effect." *Id.* (citing *Frank v. State*, 183 S.W.3d 63, 78 (Tex. App.—Fort Worth 2005, pet. ref'd)). "The trial court's decision will be reversed only if it was outside the zone of reasonable disagreement." *Id.* (citing *Salazar v. State*, 38 S.W.3d 141, 150–53 (Tex. Crim. App. 2001), *abrogated on other grounds by Najar v. State*, 618 S.W.3d 366 (Tex. Crim. App. 2021)).

> The Fort Worth Court of Appeals has stated that
>
> [a]mong the many factors a court may consider in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice are the number of exhibits offered; their gruesomeness; their detail; their size; whether they are in color or black-and-white; whether they are close up; whether the body depicted is clothed or naked; the availability of other means of proof; and other circumstances unique to the individual case.

*Id.* (citing *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000)).

Edwards stated in the analysis portion of his brief that "[m]any of the State's exhibits are overly gruesome because they are graphic" and "show gruesome injuries." This circular analysis is insufficient to show that the trial court abused its discretion in admitting the autopsy photographs.

4

In this case, the color photographs admitted depicted the victim's naked body, excluding his genitals, were not numerous, were taken after blood had been cleaned off the body, and did not depict any mutilation from the autopsy. Instead, the photographs show the various locations of multiple gunshot entry and exit wounds. In our view, the photographs show only the injuries that the victim sustained and are no more gruesome than would be expected. *See Shuffield v. State*, 189 S.W.3d 782, 788 (Tex. Crim. App. 2006); *Sanchez*, 418 S.W.3d at 311.

We find that the photographs showing the injuries sustained by the victim were probative of the crime itself and were necessary for the State in developing its case and rebutting Edwards's self-defense claim from his confession, which was a focus of the State's closing argument. We further find that, "because they were not overly gruesome, the photographs did not pose the potential of impressing the jury in some irrational way." *Shuffield*, 189 S.W.3d at 788.

We conclude that the trial court "did not abuse its discretion [by] admitting the[] photographs, [since] the danger of unfair prejudice did not substantially outweigh the probative value of the photographs." *Id.* Accordingly, we overrule Edwards's first point of error.

## II. There Was No Jury Charge Error

In his second point of error, Edwards argues that the trial court erred by submitting the full statutory definitions of the terms intentionally and knowingly in the trial court's jury charge. The abstract portion of the jury charge instructed the jury as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

5

A person acts knowingly, or with knowledge, with respect to the nature of his conduct, or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.)).

Edwards was indicted for capital murder while in the course of committing or attempting to commit burglary or robbery. It is true that capital murder and murder are "result of conduct" offenses. *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). "As a 'result of conduct' offense '[w]hat matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified.'" *Id.* (alteration in original) (quoting *Alvarado v. State*, 704 S.W.2d 36, 39 (1985)).

Even so, "[i]n proving capital murder, the State must prove that the accused intentionally or knowingly caused the death of an individual and also that the accused engaged in other criminal conduct" like burglary or robbery. *Hughes v. State*, 897 S.W.2d 285, 295 (Tex. Crim. App. 1994). As a result, the Texas Court of Criminal Appeals wrote "that capital murder is a result of conduct offense which also includes nature of circumstances and/or nature of conduct elements depending upon the underlying conduct which elevates the intentional murder to capital murder." *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (citing *Hughes*, 897

6

S.W.2d at 295). For this reason, "in a capital murder case involving more than one conduct element," it is not error "for the definitions to include more than the result of conduct element." *Id.* (citing *Hughes*, 897 S.W.2d at 295–96); *see Gonzalez v. State*, No. 06-25-00055-CR, 2025 WL 3199446, at *5 (Tex. App.—Texarkana Nov. 17, 2025, pet. ref'd) (mem. op.) (not designated for publication) (citing *Torres v. State*, 691 S.W.3d 138, 149 (Tex. App.—Austin 2024, pet. ref'd); *Barnes v. State*, 56 S.W.3d 221, 234 (Tex. App.—Fort Worth 2001), *abrogated on other grounds by Hurd v. State*, 322 S.W.3d 787, 793 n.5 (Tex. App.—Fort Worth 2010, no pet.) (per curiam)).

Here, in accordance with the indictment, the jury was instructed that "[a] person commits capital murder when such person intentionally causes the death of an individual in the course of committing or attempting to commit the offense of robbery or burglary." As we have previously explained, these underlying offenses include nature-of-conduct and nature-of-circumstances elements. *Gonzalez*, 2025 WL 3199446, at *4–5. As a result, "[a]ll three conduct elements, therefore, are appropriate" inclusions for the mens rea abstract portion of the jury charge in Edwards's capital murder case. *Id.* at *5 (quoting *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.)); *see Patrick*, 906 S.W.2d at 491.

Because we find no jury charge error, we overrule Edwards's second point of error.

## III. Error, If Any, Was Cured When Similar Evidence Was Admitted Without Objection

Lastly, Edwards complains that the trial court erred by admitting testimony in relation to a prior offense at punishment. Because the same or similar evidence was offered without objection, we disagree.

During punishment, the State offered evidence of offenses committed by Edwards that occurred on September 14, 2010. First, the State alleged that Edwards was previously convicted of the felony offense of robbery in the Court of Common Pleas of Franklin County, Ohio, in cause number 10CR-09-5436 on January 18, 2011. The judgment of conviction, which was admitted into evidence, reflects that Edwards had pled "guilty to the stipulated lesser included offense" of robbery. The State also offered a prior conviction in the same cause number, 10CR-09-5436, for felonious assault that occurred on the same day as the robbery. Both of the Ohio judgments (conviction for robbery and felonious assault) were admitted, along with a separate stipulation signed by Edwards acknowledging that he "was previously indicted for the felony offenses of aggravated robbery . . . and felonious assault."

In further support of these offenses, the State called Robert Foster, a retired detective with the Franklin County Sheriff's Department in Ohio. Foster testified that, in September 2010, he was dispatched to "two separate stabbing calls," with the first one involving Edwards's wife and the second one involving a taxi driver. Foster testified that he initially believed he was investigating two separate stabbings but later changed his opinion. When Foster was asked how his opinion had changed, Foster said that the paramedics "had reported that they got off the bus and were walking," but Edwards lodged a hearsay objection before Foster could finish his sentence. After the State argued it was offering the testimony to show how it altered Foster's investigation, the trial court overruled Edwards's hearsay objection. The State then altered its question and asked how the information Foster received changed his investigation. Without

objection, Foster testified that he determined that the taxi driver was assaulted by Edwards and Edwards's wife. Foster said that he observed "several cuts and stab wounds" on the taxi driver.

Later, when the State questioned Foster about what the taxi driver said, Edwards lodged a hearsay and confrontation clause objection, which the trial court overruled. As a result, Foster answered that the taxi driver told him he picked up a young couple but was attacked by Edwards as he was handling cash to get change for Edwards's taxi fare. Without objection, Foster testified that he spoke with Edwards, who "said that his wife at the time was not involved in the robbery, that he did it and that it was no attempt to kill the guy at the time. He was just -- he just needed the money" and "tried to rob the man when he went to get change out of his box." The State also introduced photographs from the taxi showing blood stains and blood on the door, without objection.

In his last point of error, Edwards argues that the trial court erred by overruling his second hearsay objection and his confrontation clause objection. Edwards argues that he was harmed by the trial court's ruling because it allowed the State to characterize the offense as a "violent aggravated robbery of a taxi-cab driver" even though he had pled guilty to the lesser included offense of assault.

The State argues that error, if any, was cured. We agree. "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see Adams v. State*, No. 02-05-00379-CR, 2007 WL 495190, at \*17 (Tex. App.—Fort Worth Feb. 15, 2007, pet ref'd) (mem. op., not designated for publication). Here, the substance of the taxi driver's statement was that he had

9

picked up a young couple but was attacked by Edwards as he was handling cash to get change for Edwards's taxi fare. Yet, Foster had already testified he had determined that Edwards assaulted the taxi driver and described the driver's injuries. Foster further testified, without objection, that Edwards admitted to attacking the taxi driver because he needed the money. Moreover, Edwards had already admitted that he was indicted for aggravated robbery but pled guilty to the lesser-included offense of robbery, as well as felonious assault. Since the substance of the taxi driver's statement to Foster was admitted elsewhere without objection, any error from the admission of the statement was cured. As a result, we overrule Edwards's last point of error.

## IV.    Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     May 12, 2026
Date Decided:       June 8, 2026

Do Not Publish